ALBERT. B. ROSS, administrator, *et al*, plaintiffs in error, *vs.* THE SOUTHWESTERN RAILROAD COMPANY *et al.,* defendants in error..

1. A bill was filed by an executor, under advice, praying for certain directions as to the rights of some of the legatees, and asking a decree for the disposition of the whole estate and his discharge as executor. Some of the legatees were minors, and the bill prayed the appointment of a guardian *ad litem* to represent them, if necessary, but further set forth that the mother of the said minors was their guardian, appointed under the laws of the state of New York, where she and they resided. The bill was filed during the session of the November term, 1869, of Bibb superior court. During that term, all the parties at interest, who were adults, appeared. The mother, as guardian of the children, answered the bill. At the same term an order was taken by consent, that the cause be submitted during that term to a jury for a decree, which was done accordingly, and a verdict and judgment entered discharging the executor—decreeing that the adult legatees had been settled with, and that the assets on hand be turned over to the mother, as guardian of the minors, according to and under the laws of New York. Among the assets were certain shares of the Southwestern Railroad Company, standing on the books in the name of the executor. In pursuance of the judgment, the executor caused these shares to be transferred to the mother guardian :
*Held,* that whilst this decree was irregular and unwise, it was not void, and if had in good faith, without fraud, and with intent to protect the minors, persons acting under it or acquiring rights under it, without notice of the irregularity, will be protected.

2. Where minor orphans are in fact resident in any state, the proper courts of that state have *jurisdiction* to appoint guardians of their persons while there, and of any property they may have or acquire there, and this whether the legal domicil of said minors be in such state or not.

3. A foreign guardian, who, as such guardian, has belonging to the ward railroad stock of a railroad company in this state, may, if authorized to sell by the law of the state of his appointment, sell said stock and

authorize its transfer upon the books of the corporation, without application to any of the courts of this state.

4. The title of the purchaser of stock in a railroad company is complete against everybody but the corporation, when the seller has given on the scrip, authority to the proper officer to transfer upon the books, and the purchaser has paid the price, and the presumption is at least *prima facie* that the price is paid when the authority to transfer is given, and the possession of the scrip is delivered.

5. When a bill of review was filed to review an irregular decree, in which certain assets had been decreed to be turned over to a foreign guardian, and a final decree on said bill of review, as to the parties served, was taken, in which the securities of said foreign guardian were made liable for the waste of a portion of the assets so turned over, the complainants in said bill of review, so far ratify the original decree as that they are estopped from saying that said foreign guardianship was void.

6. This case, both as to the law and the facts, having been by consent, submitted to the chancellor below, and there being no error of law, we are of the opinion that the evidence justifies his finding, and that his judgment ought to be affirmed.

Equity. Administrators and executors. Guardian and ward. Corporations. Railroads. Sales. Jurisdiction. Stock. New trial. Before Judge HILL. Bibb Superior Court. October Term, 1873.

Joseph Bond died in 1859, having, by his will, directed his executors and executrix, Thomas H. and William S. Moughon, and his wife, Henrietta S., to sell the whole of his estate, both real and personal, except such as he had given to his wife for life, and to invest the proceeds, when collected, in reliable dividend-paying bonds and stock, issued in the state of Georgia, for the benefit of his children, Maria L., Mary J., Lewis, Henry C., and after-born children. Henry C. died, and Joseph was born afterwards. He gave to his wife a life-estate in his dwelling-house and lots, his horses, carriages, household and kitchen furniture, and *stock* of every kind in the city of Macon; and his Colawahee plantation in Dougherty county, with all the stock, provisions and appurtenances on the same.

Bond, at the time of his death, owned fifty shares of the stock of the Macon Manufacturing Company, of $100 00 each,

and one hundred and twenty-four shares of stock of the Macon Gas Light Company, of $25 00 each. Mrs. Bond claimed that this stock passed to her for life, under the will, as "stock" in Macon, and so it was ruled and decreed by the chancellor on her application.

The executors named qualified, sold the property as directed, and from the proceeds, when collected, among other things, invested, on the 7th January, 1861, in five hundred and thirty-six shares, and on the 18th June, 1861, in fifty other shares of the capital stock of the Southwestern Railroad Company, and had certificates or scrip for such stock issued to them as " T. H. and W. S. Moughon, executors, and Mrs. H. S. Bond, executrix, of the estate of Joseph Bond, deceased." And on the 4th March, 1864, W. S. Moughon, then the only acting executor, (Thomas H. having died, and Mrs. Bond married to Charles L. Nelson,) invested in fifteen other shares of the same company, taking certificate in his name as executor of the estate, making in all six hundred and one shares of Southwestern Railroad stock that he then held as such executor, for the benefit of Bond's children under his will.

Charles L. Nelson, in the latter part of 1865, or first of 1866, with his wife, who carried with her her three youngest children, to-wit: Mary J., Lewis and Joseph Bond, removed to and settled in the city of New York. In September of 1866, she visited Macon in the interest of her said three younger children, she and her oldest daughter, Maria L., who had intermarried with J. F. Nelson, having been fully settled with, and finding the executor having their whole estate in his hands, was dissipated in his habits, mismanaging and wasting the same, insolvent and largely indebted to the estate, after consultation with her attorneys, the Messrs. Nisbets, who were also the attorneys of the estate, as they had been of her husband at his death, filed a bill in equity against him, as such executor, in behalf of herself, her husband and her four children, for general account and settlement, also for injunction against further use, waste, sale, etc. This bill, being sanctioned, was abandoned on consultation with

Moughon, and a new bill filed by him against Mrs. Nelson, as guardian of the three minor children, she having in the meantime been appointed their general guardian by the surrogate of the city, county and state of New York, also against herself and her husband, individually, her husband as administrator of J. F. Nelson, who was then dead, and Maria L., the other child. This bill was returnable to the October term, 1867, of Bibb superior court, then in session, service duly acknowledged by Charles L. Nelson, as the attorney in fact of Mrs. Nelson, and as guardian of the children of Maria L. and for himself, and as administrator. It was also answered by him, individually, and in his representative character, and by the Nisbets, as the attorneys of all the defendants. And on said bill so served and answered, a consent decree was rendered during the same term, whereby it was decreed that Mrs. Nelson and her oldest daughter had been fully settled with ; that the entire balance of the estate in the hands of the executor, (saying nothing of that property in which Mrs. H. S. Nelson had a life-estate) consisting of the uncollected promissory notes for sale of property, amounting to about $100,000 00, a note on F. K. Wright for principal sum of about $15,000 00, secured by a mortgage on the Royston place, a large and valuable plantation in Dougherty county ; stocks and bonds, the results of investments by the executors, amounting to upwards of $150,000 00, including the six hundred and one shares of the capital stock of the Southwestern Railroad Company, were the property of the three minor children, Mary J., Lewis and Joseph Bond, and that the executors should turn them over to the Messrs. Nisbets, to pay fees and expenses of that proceeding ; a debt due I. C. Plant, for testator's monument, and then to Henrietta S. Nelson, as guardian for her said wards. In addition to this, William S. Moughon, the executor, independently of what he may have wasted of the estate, was indebted to the estate by note, in the sum of $124,000 00, for purchases at the executor's sale of negroes and other property. This note he was utterly unable to pay, but being possessed of a large and val-

uable plantation in Dougherty county, known as the Mud Creek place, with twenty-five mules thereon, he proposed to surrender that plantation and mules, which was about all the unincumbered property that he owned, in payment and discharge of his debt to the estate, and it was decreed, that the Mud Creek place and the mules go to Mrs. Nelson, as guardian · of these three wards.

This decree was fully executed, and all the property, bonds and stock, except the uncollected promissory notes, turned over and fully transferred to Mrs. Nelson, as such guardian.

Colonel R. K. Hines, of Dougherty county, was then appointed special guardian for that county, for these three children, to sell the Mud Creek plantation for their benefit, which he did by proper authority, on 6th December, 1869, to Benjamin H. Hill, at the price of $29,750 00, one-half paid in cash, and Hill's non-negotiable note for the other half, given at twelve months from date. The cash received and note was paid over to the New York guardian, less expense of guardianship and sale. The six hundred and one shares of Southwestern railroad stock was transferred by W. S. Moughon, as executor on the 20th December, 1867, after decree, to Henrietta S. Nelson, guardian of Mary J., Lewis and Joseph Bond, and a new certificate of stock issued to her by that company for the same.

Mrs. Nelson, afterwards, in New York, sold this stock to Moses Taylor, president of the National City Bank of New York, and delivered to him the scrip therefor, indorsed as follows:

"I authorize T. M. Cunningham, Esq., cashier, or William M. Wadley, president, to transfer the within shares to Moses Taylor, president.        HENRIETTA S. NELSON,

."Guardian of Mary Jane, Lewis and Joseph Bond."

Cunningham was the cashier, and Mr. Wadley the president, of the Central Railroad Bank at Savannah, where the Southwestern Railroad kept a stock book for transfers of stock and payment of dividends for convenience of stockholders, and this

was the usual authorization to the officers for the making of transfers on such books.

The company declining to allow the transfer on this showing, an order was procured by Mrs. Nelson, as guardian, from the supreme court of New York, authorizing the sale, and an order from the ordinary of Bibb, ratifying and approving said sale, also approved by Judge Cole, as chancellor and judge of the superior courts of the Macon Circuit and Bibb county. The company still refusing to allow the transfer made on its books, Mrs. Nelson applied by bill in equity to the superior court of Bibb, against the Southwestern Railroad to compel that company to make the transfer. This bill being dismissed on demurrer, Moses Taylor, president of the National City Bank of New York, the purchaser, filed his bill to the same court against the same company to compel the transfer, his counsel being the Messrs. Nisbets, who were employed for him by W. B. Johnston. After the transfers were effected, the Central Railroad paid their fee for this service. In the body of the bill, Moses Taylor is stated to be the complainant; this was from inadvertence of the pleader, as the bill was backed as in favor of Taylor, as president. The defendant so answered and and so the decree was taken, it being well understood on all hands that the bank, and not Taylor, individually, was the purchaser.

This bill being served and answered, came on for trial, and after solemn argument and full consideration, the court decreed and so directed that the transfer should be made, and it was done accordingly, and Moses Taylor, president of said bank, in the meantime having sold said stock to the Central Railroad, he immediately transferred the whole stock to that company.

In December, 1860, Mary J., the oldest of the three children, intermarried with James W. Lockett. And in April, 1870, said Lockett and wife sued out an attachment against said Henrietta S. Nelson, as guardian of said Mary Jane, and her husband, Charles L., which was levied on the house and lots in Macon, the gas and manufacturing stock, the Col-

awahee plantation in Dougherty county, in which Mrs. Nelson had a life-estate, and Hill and Hines & Hobbs were garnished. The sum claimed by Lockett and wife was $50,-000 00, as due on account of his said wife, Mary. The same property had been attached by other creditors as the property of Charles L. Nelson, to satisfy his debts. Mrs. Nelson now came forward and filed her bill in equity to enjoin all these attachments, setting up an equal interest for satisfaction in the property attached on the part of the two minor children, and asked that their rights be protected as well as those of Lockett and wife. She also set up her separate title to the property as against her husband and his creditors; also that the house and lots in Macon had been sold by order of the court, in New York, and that Maria L., her oldest daughter, was the purchaser, not only of her life interest, but of the remaining interest of the children.

Lockett and wife only answered this bill, and in connection with that filed a cross-bill against Mrs. Nelson and her husband, the gas-light and manufacturing companies, Benjamin H. Hill, the Central Railroad and Banking Company, the Southwestern Railroad Company, Maria L. Nelson, Lanier & Anderson, and Lewis and Joseph Bond, minors, and a great many others, but those named were the only persons served.

The bill asked to review and reverse the decree rendered at October term, 1867, on the complaint of William S. Moughon, executor, so far as the same affected them injuriously, to-wit: in so far as it recognized Mrs. Nelson as the guardian of the minor children of Joseph Bond, and directed their property to be turned over to her; as it directed the six hundred and one shares of Southwestern Railroad stock to be transferred to Mrs. Henrietta S. Nelson, as guardian, and as it declared the gas stock and manufacturing company stock to have passed to Mrs. Bond for life by her husband's will. It maintained that the sale of the house and lots to Maria L. Nelson was void, and asked to have the same so declared. It claimed that the sale of the Mud Creek place to Benjamin H. Hill was illegal and void, and asked to have that so declared;

Ross *et al. vs.* The Southwestern Railroad Company.

that the several decrees and transfers under the same of the six hundred and one shares of Southwestern Railroad stock were all inoperative and void as to the minor children, and asked to have the same so declared. It asked that Henrietta S. Nelson, as guardian, and Charles L. Nelson, and Maria L. Nelson, her sureties, should account for all that came to her hands, including the six hundred and one shares of the Southwestern Railroad in case the transfers thereof were held to be good, and that the Nisbets be restrained from delivering to Maria L. Nelson the notes or proceeds thereof, which she claimed as *bona fide* purchaser.

James T. Nisbet was appointed guardian *ad litem* of Lewis and Joseph Bond. Maria L. Nelson answered this bill, insisting that her title was good to the real estate and notes.

While these proceedings were pending, letters of administration were issued to Albert B. Ross, the clerk of Bibb county superior court, as administrator of Joseph Bond, deceased, and a bill was, on the 25th March, 1871, filed in Bibb superior court, returnable to the April term ensuing, on the complaint of said Ross, as such administrator, James W. Lockett and his wife, Mary Jane, and by said Lockett as the next friend of Lewis and Joseph Bond, minors, against the Central Railroad and Banking Company, and the Southwestern Railroad Company, in which it was complained that the decree of October term, 1867, on complaint of William S. Moughon, executor, against Henrietta S. Nelson, guardian, and others, was "absolutely void so far as it affected the rights of complainants," that all transfers made under it were void; that the act of the Southwestern Railroad in permitting the transfer of the six hundred and one shares on its books, was fraudulent and illegal; that no valid transfer thereof had been made, but the title thereto was still in the estate of Joseph Bond. That the Central Railroad purchased said stock with full notice of complainants' rights. The bill asked that the certificates of said stock should be canceled and new scrip issued to the administrator of Bond, and that the dividends

since the illegal transfer to Mrs. Nelson should be paid to him, with interest.

James T. Nisbet, as the guardian *ad litem* of Lewis and Joseph Bond, answered both bills, Mrs. Nelson's and Lockett's, in one answer, in which he informs the court that he had been notified by Lewis and Joseph Bond, one nearly of age, and the other a well educated and intelligent lad of fourteen or fifteen, in a paper submitted from their residence with their mother in Kentucky, that they were content with their present guardian, the said Henrietta S. Nelson, and desired her to remain in possession and control of any and all property belonging to them.

At the October adjourned term, for the year 1871, and on the 12th day of January, 1872, a final and absolute decree as to all the matters embraced therein was rendered in the original bill of Henrietta S. Nelson in her own right, and as guardian of Mary J., Lewis and Joseph Bond, against Maria Nelson, Lockett and wife *et al.*, and also of the cross-bill of Lockett and wife *vs.* Mrs. Nelson *et al.*, in which, following the decree of October term, 1867, it was decreed that all the property belonged to the three minor children. L. N. Whittle and James T. Nisbet were appointed commissioners to receive the Bond residence and lots in Macon, consisting of thirteen or fourteen acres, the White Hill place, described in the will of Bond as the Colawahee place, and the note and mortgage to secure it on the Mud Creek place, given by B. H. Hill for its purchase, on which was due over $15,000 00. In the two first Mrs. Nelson had a life-estate, and the last was acquired exclusively under the decree of October, 1867. Again, the note and mortgage on F. K. Wright for the Royston place, on which was due over $15,000 00, which the commissioners subsequently foreclosed, sold out and purchased under the said decree for the benefit of these three minor children, and now hold the same as their property, all the notes and judgments and moneys collected on them, in the hands of Messrs. Nisbets under the decree of October, 1867, and all the gas and manufacturing stock with accrued dividends on the same and

rents on the dwelling-house.   The commissioners were directed by this decree to reduce the same to cash by sale, as they thought proper, and to report to that court, the fees of Lockett and wife and Joseph and Lewis Bond to be taxed by the court and paid out of that fund; the Hoyt & Gardner debt being settled out of the rents of the Colawahee place; the balance on the judgment of Pointer Brothers against Charles L. Nelson, to be paid by the commissioners out of the assets and reimbursed out of any money that might be reached of C. L. Nelson's property by that proceeding; the commissioners to keep separate accounts of moneys received by them from the property of Henrietta S., which was a life-estate in Colawahee and in the gas and manufacturing stock; of Maria Nelson, which was the mansion house and lots in Macon, the notes, bonds and judgments in the hands of the Messrs. Nisbets; Nelson's property being his interest in Sandford's estate and in notes on Vason & Mallory.

The cross and original bill were retained in court for a final hearing, " when the several matters and things touching the estate of Joseph Bond, deceased, and the guardianship of Mrs. Nelson for her three youngest, which are not included and covered by this decree, viz.: the stock of the Southwestern Railroad and the dividends thereon claimed to have been sold and transferred to Moses Taylor, Esq., in New York, the assets and property in the hands of Mrs. Nelson, as guardian, and all other property not in this decree embraced, in which further and final decree a full and final settlement and accounting shall be had and taken between said Mrs. Nelson, as guardian as aforesaid, and said three younger children of Joseph Bond, deceased, when they three shall be made equal, and when Mrs. H. S. Nelson be allowed the proper credits for the value of her life-estate in the White Hill place and the gas and manufacturing stock, all of which shall be settled in said further and final decree." This decree was against the guardian and the sureties on her bond.

The commissioners sold the Macon real estate and stock, realizing some $60,000 00; collected largely on the notes and

judgments, sold out the White Hill and Royston places, and bought them in for the three younger children, and are now receiving annual rents for both places.

This decree absolutely settled and disposed of all the matters in litigation in the first original and cross-bill, with the exception of the Southwestern Railroad stock, leaving nothing to be adjudicated but the question whether that stock had passed out of the estate of Bond and the children of the testator, by the transfers and decrees before stated, and this question was taken out of these proceedings by the subsequent bill in favor of Ross, administrator, and others, against the Central and Southwestern Railroad Companies.

After this decree the Central and Southwestern Railroad Companies put in their separate answers to the Ross bill, in which they pleaded that the transfer by William S. Moughon, as executor, of the stock to Mrs. Nelson, as guardian of Mary J., Lewis and Joseph, passed the stock out of the estate to her, as guardian of these children, and that her transfer to Moses Taylor, president, etc., passed the title to him, and out of the estate and these children. The decree of October, 1867, and in favor of Moses Taylor, president, and transfers under the same, were all pleaded in bar of these proceedings. By an amended answer, an adoption, ratification and confirmation of the decree of October, 1867, was pleaded and set up, in suing out the attachment, and by the decree taken and rendered under the bill and cross-bill in January, 1872, and by the benefits which were acquired under these proceedings, all of which they had accepted.

The court to whom all questions of law and fact were submitted, decreed in favor of the defendants. The complainants moved for a new trial upon the following grounds, to-wit:

1st. Because the same is contrary to law and evidence.

2d. Because the court erred in holding and decreeing that the Southwestern Railroad Company, in transferring the six hundred and one shares of stock in dispute, were not charged with notice of the contents of the will of Joseph Bond, deceased, and were bound to take notice of nothing beyond what

was stated in their books, and contained in the scrip issued for said stock, to-wit: that it was standing in the name of the executors of Joseph Bond.

3d. Because the court erred in holding that the second marriage of Henrietta S. Bond, and her removal to New York, and carrying along with her the minor children, the children of the said Joseph Bond, deceased, was a change of the domicil of said minors in law as well as in fact.

4th. Because the court erred in holding that at the time of the removal of the minor children of said Joseph, they had no acting testamentary guardian resident in this State, preventing their domicil from following that of their mother, and in holding and deciding that the purchase of the six hundred and one shares of Southwestern Railroad stock was not an investment under the third item of the will of Joseph Bond for the benefit of his minor children, but was simply a purchase by the executors.

5th. Because the court erred in finding and decreeing that the Southwestern Railroad Company made the transfer of said six hundred and one shares of stock to said Moses Taylor, president, as aforesaid, in good faith, under the several orders of the supreme court of the city and county of New York, the court of ordinary of Bibb county, Georgia, under the decree of the superior court of said last mentioned county, had and rendered on a bill filed by said Moses Taylor, president, as aforesaid, against said Southwestern Railroad Company for the purpose of authorizing and enforcing such transfer, and in holding that these were all necessary parties to such bill to protect said Southwestern Railroad Company from all damages to complainants for permitting such transfer.

6th. Because the court erred in holding and decreeing that William S. Moughon, as surviving executor of Joseph Bond, deceased, had full and ample authority to transfer said stock to Henrietta S. Nelson, as guardian of complainants, so far as such transfer can be made to affect the rights and liabilities of said Southwestern Railroad Company for permitting the same to be done, either with or without the decree of the court ren-

dered on the bill for direction filed by said Moughon as executor of Bond.

7th. Because the court erred in holding and decreeing that while the proceedings under the bill filed by Moughon, as executor, were irregular, and that the court before which said case was tried, did not get proper jurisdiction of the minors by reason of its failure to appoint a guardian *ad litem* to represent them, yet, that the decree rendered therein did, as between said Moughon, executor, and the Southwestern Railroad Company, justify said railroad company in permitting the transfer of the stock upon their books to Henrietta S. Nelson, as guardian, by said Moughon, executor.

8th. Because the court erred in holding and decreeing that the complainants were estopped and barred by their action in suing out an attachment against Mrs. Henrietta S. Nelson, guardian, and Charles L. Nelson, and filing a declaration in attachment thereon, and by their cross-bill to the bill filed by said Mrs. Henrietta S. Nelson and others, to enjoin said attachment, and for other purposes therein set forth, and by the various actions and proceedings under said attachment, and said bill and cross-bill, and by the interlocutory decree had upon said bill and cross-bill, from prosecuting this cause against said defendants, the Southwestern Railroad Company, and the Central Railroad and Banking Company, and from recovering said stock and dividends or holding them liable for the transfer thereof.

9th. Because the Court erred in holding that said decree referred to in the preceding ground of this motion is a ratification and confirmation of said previous decree and proceedings of said Henrietta S. Nelson in her appointment as guardian, and as to the jurisdiction of said Court rendering said decree over said minors, and that said decree as to the transfer of the six hundred and one shares of stock of said Southwestern Railroad by said Moughon, executor, to said Henrietta S. Nelson, guardian of said minors, was thereby made valid and binding on each and all of said minors.

10th. Because the court erred in finding and decreeing that

the Southwestern Railroad Company is not liable to complainants for said stock or the dividends thereon.

11th. Because the court erred in finding that the Central Railroad and Banking Company is the *bona fide* owner and holder of said stock, and is not liable to account to·complainants for the same or for the dividends thereof.

The motion was overruled and complainants excepted.

WHITTLE & GUSTIN; POE, HALL & LOFTIN; B. H. HILL & SON, for plaintiffs in error.

R. F. LYON; JACKSON, LAWTON & BASINGER, for defendants in error.

McCAY, Judge.

· To say that the decree taken in 1869, is a void decree, simply because no formal order was taken making Mrs Nelson, the mother of these plaintiffs, their guardian *ad litem*, notwithstanding the whole proceeding was in good faith, is to pass a very harsh and technical judgment. It must be remembered that the litigation was commenced by a bill filed in the name of the minors, by Mr. and Mrs. Nelson, as *their next friends*, and on this bill an injunction was granted. Before any final action was taken on this bill, the executor filed a bill for direction, etc., asking that guardians *ad litem* should be appointed for the minors, if the court should think it necessary. Service was acknowledged by Mrs. Nelson as the guardian of the children, appointed by the New York court, and the court made no formal appointment of a guardian *ad litem*. We are not prepared to say that a decree taken against an infant, under such circumstances, is *ipso facto*, void. By the chancery practice in England, an infant may be sued and, ordinarily, must be served. But it has been held that the service may be on the parent: Smith *vs.* Marshall, 2 Atk., 70. The appointment of a guardian *ad litem* is not necessary to give the court jurisdiction, to entertain the suit. As to infants, Mr. Daniel says: "There are individuals,

Ross *et al. vs.* The Southwestern Railroad Company.

who, though they *may be sued* alone upon the record, yet, are incapable from want of maturity or weakness of their intellectual faculties, of conducting their own defense, and must, therefore, apply for and obtain the assistance of others to do it for them:" Daniel's Chan. Prac., 174, 1 vol. The failure to appoint a guardian *ad litem*, in a regular chancery suit, would seem, therefore, rather an irregularity than a defect, like want of service. It appears from the evidence; indeed, it is not denied, that the whole proceeding was not only in the very best of faith, but to the advantage of the minors. What evil has come, has been the effect of subsequent action, and had this decree not been taken, it is probable the effects would have been lost by the waste of the executor. It is clear that the infant's rights were defended, counsel employed of high character, that a guardian did appear, that such guardian was, in fact, recognized by the court, and that the object of the whole proceeding, (though in form, the minors were defendants,) was to protect their estate by getting it out of the hands of an insolvent executor, who had already wasted much of it. The court, who was, by consent, made the judge of both the law and the facts, has, in terms, found the proceedings complained of, to have been instituted in good faith, and to have been for the benefit of the minors, and this finding is, in our judgment, supported by the evidence. But we agree with Judge HILL in his holding that the proceedings under the bill of Mrs. Nelson, filed in August, 1870, to which these plaintiffs, as well as all other parties at interest, were parties, and fully represented, ratified the decree of November, 1867, under which Mrs. Nelson got the control of this stock. The bill filed in that case expressly prayed a review of the decree of November, 1867. The decree, under the bill of 1870, ratifies the decree of 1867. It treats the property got by the decree of 1867 as the property of the minors in the hands of Mrs. Nelson, as their guardian, and charges her securities for the waste of it. Can the plaintiff be permitted to treat a foreign guardian as such for one purpose, and repudiate her as such for another purpose? Surely these securities on her

New York guardianship, cannot be legally charged with her receipt of property under this decree of 1867, if she did not, under the law, have a right to get that possession. Nor was it competent, in our opinion, for the plaintiffs to thus ratify the decree of 1867, and then reserve the right to go on those defendants, with the privilege of repudiating the guardianship of Mrs. Nelson in this suit. There was in this cross-bill of 1870, a special prayer for a review of the decree of 1867, and Moughon, the complainant in the bill of 1867, was made a party to the cross-bill. The whole case, including the cross-bill, went to trial in 1871, without any service or appearance by Moughon, and the decree, without any reservation, of the review, treats Mrs. Nelson and her securities as guardians, and liable for what she received and got possession of under the decree in the bill filed by Moughon. It seems to us that this was not a setting aside of the decree of 1867, but an abandonment of the prayer for review. The decree of 1867, was on Moughon's bill for direction and for leave to settle up the estate in a particular way. The decree on the bill and cross-bill of 1870, accepts much of this 1867 decree as to be accounted for by Mrs. Nelson and her sureties, and charges the property of the security in this state for her waste of it. And whilst there is a reservation, as against Mrs. Nelson, of the right to charge her in the future with the railroad stock, there is no reservation of the right to review the decree of 1869. Nor is it clear that in this reservation anything else was intended to be reserved, but the liability of Mrs. Nelson, as guardian, to account for the Southwestern Railroad stock. There is no express reservation of any right to ask a decree against Taylor or either of the railroad companies, and if it be considered that in the decree that was taken, Mrs. Nelson is treated as the guardian of the minors, and her securities as such guardian, charged with her default, it is saying a good deal, to insist that it was the intent of this reservation to hold up the right to follow this stock, as a specific thing, into the hands of the defendants, Taylor and the Central Railroad Company. Whatever may

be the rule as to the power of a widow who has married again, to change the residence of her first husband's children, so as to affect any of their legal rights to property, or of inheritance, the fact is undisputed that the actual residence of these was changed, and that their persons were in the state of New York. It seems to us that if the persons of minors are in a jurisdiction there is a right and duty, in the courts of that jurisdiction, to appoint a guardian over their persons and any property they may have there. The appointment does not clothe the guardian with any authority extra-territorial. But it is not a void appointment, it is good for acts done in the jurisdiction, as to *property actually there*. As to this stock a simple statement of the facts is: It stood on the books of the Southwestern Railroad Company, in the name of Bond's executors. Under the power given Mrs. Nelson, as guardian, by the decree of 1867, it was transferred on those books to her, was by her sold, as guardian, in New York, under the laws of New York, to Moses Taylor, who paid her for it, and who had no notice of any irregularity, or any defect of the title of Mrs. Nelson, as such New York guardian. The transfer of the stock on the books, was by Moughon, as executor, to Mrs. Nelson, as guardian of these minors. Mr. Taylor had no actual notice at the time of his purchase, of even any irregularity in the decree of 1867, nor did he have any actual notice from whence Mrs. Nelson, the guardian, obtained the stock. It is contended that he is charged with notice by the books of the corporation; that these books showed the stock had stood in the name of Bond's executors, and were transferred to Mrs. Nelson, guardian of Bond's children, and that these facts charged him with notice of Bond's will, and of the decree of 1867, and that he had these for constructive notice of all the plaintiffs' claim. As we have said, we do not think the decree of 1867 void. It was had before a court having jurisdiction of the subject matter, and certainly of some of the defendants. The plaintiffs to this suit were parties to the bill of 1867. Their mother appeared by acknowledgment of service, as their guardian, and by eminent counsel. The

Ross *et al. vs.* The Southwestern Railroad Company.

only defect so far as the parties are concerned, was that no formal order was passed appointing a guardian *ad litem.* A guardian did appear, the court recognized that guardian, and throughout the whole proceedings the rights of the infants were taken care of. If there was a fault of the court by which the guardian was permitted to get possession, without security, that was not a fault which affected the jurisdiction and would not vitiate the title of Mr. Taylor, admitting that he is charged with notice of the decree. Put the case as though he had seen the decree : He finds, 1st, a bill filed in the name of these minors, by their next friend and mother, Mrs. Nelson, and others, against Moughon, asking an injunction and praying a distribution; he finds that injunction granted. Nothing appears in the *record* disposing of that bill except the proceeding on the second bill. 2d. He finds the bill filed by Moughon, an acknowledgement of service by Mrs. Nelson, as guardian, and finds her recognized as such by the court in its decree, and the stock ordered to be turned over to her as such guardian. In our judgment, had he seen all this it would not invalidate his purchase. The decree was not void, and a purchaser charged with notice of it, may be nevertheless an innocent purchaser. Nothing unfair appears; in fact, the proceedings show, as well as the evidence produced on the present trial, that the decree was for the benefit of the minors. The loss has not come from the decree, but from the mistake of the judge in permitting Mrs. Nelson to take the property without security. Nor are we prepared to say that what appeared on the books of the railroad company was constructive notice to Taylor that Moughon had no right to transfer to the guardian. Nothing on the books showed by what authority Mrs. Nelson was authorized to receive it. That the stock stood in the name of Moughon, as executor, might, perhaps, put a purchaser on notice to examine the will. But that will clearly leaves the investment with the executor. The stocks are to be *safe,* and it would be the undoubted right and duty of the executor to keep them safe. This case is not like the case of *Nutting et al. vs. Thomason et al.,* 46th *Georgia,* 34.

There the stock stood in the name of the deceased. Here it stood in the name of the executor. The purchaser from Mrs. Nelson could only be bound to inquire into the authority of Moughon to transfer; certainly he cannot be held to inquire whether the transfer was a wise one. How could he know that this was not a sale to Mrs. Nelson, and that the executor had sought a safer investment? As against everybody except the railroad company, the title to the stock passed by the sale to and payment by Taylor. Such is, we believe, the well established rule. The sale and transfer of the stock, with an order to transfer it, passes the title; the transfer on the books is only to protect the company who may have liens upon it: Angell & Ames on Corp., 568, 571. If Taylor, then, was an innocent purchaser at the time he bought and paid his money, no subsequent notice, either to him or his vendees, could affect his or their rights. Stocks in railroads are personal property, (see Code section 233,) and if legally sold by a foreign guardian, according to the laws of the state of the guardianship, and the possession thereof is transferred, the title is passed. Our act of March 6th, 1856, recognizes the right of sale and transfer by a foreign guardian, and there is nothing in the Code inconsistent therewith. Upon the whole, whilst it is a sad thing that this fine estate has been so largely squandered, yet, courts are bound to see to it that innocent purchasers be also protected and whilst it would give us great pleasure to see these children fully in possession of their father's bounty, we do not feel that the rules of law justify us in reversing the decree of the judge below, whose full finding forms a part of the record.

Judgment affirmed.