No. 17.—Isaac M. Brown, guardian, &c. plaintiff in error, *vs.* James Anderson, executor, and others, defendants in error.

[1.] A will is proven in *common* form when the executor presents it before the Ordinary, and in the absence of, and without citing the parties interested, produces witnesses to prove the same.  It seems that it may be proven by the oath of the executor alone.  Quere?

[2.] To prove a will in *solemn* form, it is necessary that all parties interested in the estate of the decedent, be cited to "witness proceedings"—that

Brown *vs.* Anderson and others.

the will be produced—that the witnesses be examined, and that all parties in interest have the privilege of cross-examination. A probate in *solemn form* is conclusive, unless procured by fraud and collusion, and may be made at the instance of the executor or of the parties in interest.

[3.] A will is proven before two Justices of the Inferior Court upon the written oaths of the subscribing witnesses in vacation, without notice to parties in interest; and at the next regular term of the Court of Ordinary is, upon those affidavits, passed to record. Notice was given to the legatees of the application at the regular term of the Court to pass the will to record, but the witnesses were not produced and sworn. *Held,* that the will was not proven in *solemn* form.

[4.] A party cannot enter an appeal in a cause pending in the Court of Ordinary without the consent of his adversary, until a decision is made by that Court; but an appeal entered by consent before a decision, is valid; and such appeal in cases where there is a plea in bar, and an answer to the merits, carries up both issues.

[5.] A judgment against the executor, setting aside a will on a rule to prove it in *solemn form,* the will having been previously proven in *common form* and recorded, and the executor qualified, is binding upon the legatees, although not parties on the record, unless obtained by fraud and collusion on the part of the executor.

[6.] If, pending that proceeding, the legatees, who are infants, have a guardian *ad litem* appointed, who does not decline the trust, and is present in Court, although not made a party on the record, the judgment will be, on *that account,* binding upon them.

In Equity, in Upson Superior Court. Tried before Judge STARKE, November Term, 1852.

Mrs. Macharine Bunkley executed her will on the 18th of January, 1850, leaving the larger portion of her property to George W. Bunkley during his life, and after his death, to his children, the complainants in the bill; and also making bequests to the defendants in the bill. The will contains a legacy to James Anderson, who is in it nominated the executor. Mrs. Bunkley died, and the will was proven in common form by the oaths of the subscribing witnesses, before Thomas J. Bethel and Thomas Beall, Justices of the Inferior Court of Upson County, in vacation, on the 11th March, 1850.

A caveat was filed to the will during the May Term, 1850, of the Court of Ordinary of said County, by Samuel Barksdale, a brother of Mrs. Bunkley. At the same term of the

Court, George W. Bunkley was appointed guardian, *ad litem*, of his minor children, the complainants. James Anderson, the executor, had previously notified the legatees under the will, of his intention to offer the same for record at the said term of the Court. The caveat was overruled, and the will, upon the affidavits of the subscribing witnesses thereto, was admitted to record, and Anderson was qualified as executor. At the November Term, 1851, of said Court, Terrel Barksdale and Stephen Harvey, petitioned for a rule *ni si*, calling upon the executor to show cause why he should not again prove the will, and caveating upon various grounds, in substance, as follows:

1st. The non-execution of the will by Mrs. Bunkley.

2d. The unfair conduct of Anderson, the executor and draftsman of the will, in the procurement of a legacy to himself.

3d. That the will was never read to Mrs. Bunkley.

4th. The joint improper influence of Anderson and George W. Bunkley, over the testatrix.

5th. The testamentary incapacity of the testatrix, &c. all of which grounds were substantially embraced in the first caveat to the will, filed by Samuel Barksdale.

The cause was continued, and on the 18th day of November, 1850, the rule *ni si* was granted.

At the January Term, 1851, of the said Court of Ordinary, Anderson, the executor, answered the rule *ni si*, traversing the charges made in the caveat, and insisted that the will had been proven in solemn form, and that the judgment on the first caveat was conclusive, &c.

At the same term of the Court, and without a decision by the Court, it was agreed by the parties that the rule *ni si* and answer be carried to the appeal by consent, and that if the Superior Court should overrule the estoppel pleaded by Anderson, the executor, that the caveat contained in the rule *ni si* be considered on the appeal, a caveat to the will, and the caveators be allowed to make any amendment they deemed proper, and Anderson to traverse the caveat, and the same to

stand for trial in the Superior Court as though it had been decided in the said Court of Ordinary.

On the 25th March, 1851, at Chambers, Judge *Starke*, upon the representation of Obadiah C. Gibson, that the children of George W. Bunkley were largely interested in the cause pending on the appeal, and that George W. Bunkley, their guardian *ad litem*, was dead, but previous to his death had engaged him, the said Gibson, to protect the interest of said children, and that Terrell Barksdale and Stephen Harvey the testamentary guardians of said children, declined to act for them in that capacity, appointed Matthew H. Sandwich, Clerk of the Superior Court of Upson County, guardian *ad litem*, for said children.

At October adjourned Term, 1851, Anderson, the executor, traversed the caveat. At the same term, Mary E. Barksdale, Terrel J. Barksdale, minor children of Horatio Barksdale, a brother of the testatrix, and others, were made parties to the cause pending on the appeal. During the same term, all objections to the caveat being withdrawn, the rule *ni si* was made absolute, and the executor ordered to prove the will in solemn form, and upon the issue " *devisavit vel non;*" the Jury found against the will. At the May Term, 1852, of said Court, a new trial was granted; which judgment awarding the new trial was, by writ of error, carried to the Supreme Court, at Decatur, August Term, 1852, and by that tribunal reversed.

On the 15th July, 1852, the complainants, Martha A. Mary E. Caroline M. and John B. Bunkley, (minor children of George W. Bunkley, deceased,) by their guardian, Isaac M. Brown, filed their bill against Anderson, the executor, and Stephen Harvey and Terrell Barksdale, their testamentary guardians, setting forth the will of Mrs. Bunkley, the loan therein of a large portion of her property to George W. Bunkley during his life, and the devise and bequest thereof in remainder, to complainants. The bill sets forth the proceedings had in relation to said will in the Court of Ordinary, the re-

fusal of their testamentary guardians to act for complainants, &c.

The bill charges that the proceedings had on the last caveat were illegal and void.

The bill prayed for a discovery and a decree directing distribution, &c.

To this bill the defendants pleaded the proceedings had on the caveat to the will as an estoppel.

The complainants demurred to the plea. The Court overruled the demurrer and sustained the plea, and this decision is brought up for review.

CHAPPELL, HALL & RUTHERFORD, for plaintiff in error.

L. B. SMITH and B. HILL, for defendants in error.

*By the Court.*—NISBET, J. delivering the opinion.

We are to determine whether the Circuit Judge administered the law when he overruled the demurrer to the plea filed by the defendants in the Court below. The defendants pleaded in bar, a judgment of the Superior Court of Upson County, upon appeal by consent from the Court of Ordinary, setting aside the will of Mrs. Bunkley, upon an issue of *devisavit vel non.* The case originated before the Ordinary upon a citation to the executor, on the part of Terrel Barksdale and Stephen Harvey, parties interested in the estate of Mrs. Bunkley, calling upon him to show cause why the will should not be propounded for probate in solemn form. At the same time, they filed a caveat to the will, upon various grounds. The executor answered upon the order of the Ordinary, the rule calling upon him to show cause why the will should not be proven in solemn form, traversing the caveat, and pleading in bar of the right of the applicants to have the will proven in solemn form, that it had already been proven in solemn form and passed to record. The question made on this plea in bar went to the Superior Court upon appeal. The judgment of the Superior

Court on that question, which was involved in the judgment setting aside the will, being, as stated, pleaded in bar of this bill, and the plea being demurred to, it is insisted that the demurrer ought to have been sustained, because:

1st. The Ordinary had no jurisdiction of the cause, because the parties were estopped from having the will proven, on the ground that it had already been once proven in solemn form, and if the Ordinary had no jurisdiction, the Superior Court could acquire none by appeal, and therefore, its judgment was void. We are, therefore, first to inquire whether there was a previous probate of Mrs. Bunkley's will, *per testes.* As to this point, how stand the facts ? By authority of the Act of 1810, the will was presented to two of the Justices of the Inferior Court, Messrs. Bethel and Beall, by the executor, Anderson, in vacation, and proven by the written oaths of the subscribing witnesses. No notice to the parties in interest, whatever, was given. The Act of 1810, whilst it allows probate in vacation, requires the will to be passed to record at a regular term of the Court of Ordinary. *Cobb's N. D.* 284. At the next term after the probate, to wit : at May Term, 1850, the will was ordered to record upon the written testimony of the witnesses, taken before Bethel and Beall, and the executor qualified. Whether they were present or not does not appear ; it is certain, however, that they were not examined. Notice of his intention to apply at this term for the record of the will was given by the executor to the legatees. Was there, under these facts, a probate of this will in solemn form? We are very clear that there was not.

[1.] A will is proven in common form when the executor presents it before the Judge, and in the absence of, and without citing the parties interested, produces witnesses to prove the same. In some Courts the will may be proven in this form by the oath of the executor without more. Such probate, and it seems to me, with good reason, seems to be discouraged in the States of our Union, very generally. *Jarman on Wills,* 215. 1 *Williams' Executors,* 205. *Swinb. Pl.* 6, §14, *p.* 2.

*Godolph. pt.* 1 *ch.* 20, §4.   2 *Black. Com.* 508.  1 *Greenleaf's Evid.* §518.

[2.] In England, to prove a will in solemn form, it is necessary that all such persons as have an interest in the estate of the deceased (as the widow and next of kin) should be cited to appear and witness the probation and approbation of the will; that it should be exhibited to the Court in their presence; that the witnesses should be sworn and examined secretly and severally, and that the adverse party have the privilege of cross-examination.   There it seems that the examination is by commission, ordered by the Court, and the depositions are taken down in writing, which are afterwards published, and if the Judge finds the proof sufficient, he pronounces a decree in favor of the will.   1 *Williams' Executors*, 208, 209.   *Swinb. Pl.* 6, §14, *p.* 3.   *Godolph. pt.* 1, *c.* 20, §4.   *Jarman on Wills*, 217.

Exactly the same formalities are not required with us, but it is necessary with us that all parties in interest be cited to witness proceedings; that the will be produced in open Court; that the witnesses be there examined, and that all parties in interest have the privilege of cross-examination.   The probate in form of law, may be at the instance of the executor, or it may be at the instance of the parties in interest.   The probate of a will in solemn form is conclusive; the executor cannot be compelled to prove it again, and although all the witnesses afterwards be dead, the will still retains its full force.   Not so when proven in common form; for in that case, the executor may be compelled by any party interested, to prove it *per testes*.   The time within which this must be done, does not appear to be certainly fixed; it is, however, by weight of authority, thirty years in England.   1 *Williams' Executors*, 209.   *Swinb. pt.* 6, §14, *p.* 4.   *Godolph. pt.* 1, *ch.* 20, §4.   *Newde vs. Weeks*, 2 *Phillim.* 331, *note.*

[3.] According to the law then, neither the proof of this will as it was had in vacation, nor the proceedings before the Court at May Term following, nor both together, amounted to a probate in solemn form.   The proof in vacation was not

in solemn form, because nobody was cited there to witness the proceedings.   The absence of notice is conclusive as to that. The legatees were notified that the executor intended to apply at the May Term of the Court, for an order to admit the will to record; but it does not appear that the next of kin were notified ; whether all the next of kin, or any of them are leg- atees, we have no means of knowing.   But farther, there was no proof of the will in solemn form at that term of the Court. It was admitted to record on the written oaths of the witnesses previously taken.   They were not examined—it does not even appear that they were present.   Of course the parties notified had no opportunity to cross-examine them, and that fact is conclusive against the probate being in solemn form.   Nor, taking the whole as the transaction of probate, (which, I think, is the correct view of the matter,) was there a solemn proba- tion of the will, because at no time, had the parties the oppor- tunity of cross-examination. ' In the first instance, they were not notified, and in the second, (if all were notified, of which we are not at all certain,) the witnesses were not produced and sworn.   So the Ordinary was not precluded by a previous probate in solemn form, from entertaining the application for a probate upon which the appeal arose, and the Court did not err in overruling the demurrer to the plea, so far as this ques- tion is concerned.

[4.] The ground in support of the demurrer upon which counsel relied with confidence, and upon which they put forth much of their acknowledged strength, is that the judgment of the Superior Court, setting aside the will, is void for the want of jurisdiction, because there was no decision of the Court of Ordinary upon which an appeal could be taken, either by con- sent or otherwise.   This general objection to the judgment, they divided into two.   Denying first, that there was any ap- peal by which the Superior Court could take jurisdiction, be- cause there was no decision in the case before the Ordinary; they farther insisted, that if there was an appeal which gave to the Superior Court jurisdiction, it carried up only the ques- tion in bar whether the probate first had was in solemn form

or not, (which I have already discussed,) and did not extend to the question of *devisavit vel non*, and therefore as to that question the judgment was void for want of jurisdiction.   It is not denied but that the parties agreed that the last question should go up, but it is insisted that it did not legally go to the Superior Court, because it was not a question which had been reached before the Ordinary, at the time when the consent was entered into to appeal, and which, had the cause proceeded in that Court, might not have been reached at all.

It becomes important, to a fair view of these points, to ascertain the precise *status* of the cause when the parties entered into the agreement to carry it to, the appeal, and to present the agreement itself.   Some six months after the will was passed to record, to wit, at Nov. Term, 1850, of the Court of Ordinary of Upson County, the petitioners applied for and obtained a rule *ni si*. calling upon the executor, Anderson, to show cause why the will should not be proven in solemn form, and setting forth divers grounds of *caveat* to it.   At the January Term following, Anderson, the executor, answered the rule, by setting up the previous probate as conclusive, and claiming that it could not be opened, because it was a probate in solemn form of law; and also by traversing the grounds of caveat.   As the case then stood, and before any decision whatever was had in it, the parties agreed that the rule *ni si*. and answer, be carried to the appeal by consent, and that if the Superior Court should overrule the estoppel pleaded by Anderson, the executor, that the caveat contained in the rule *ni si*. be considered on the appeal a caveat to the will, and that the caveators be allowed to make any amendment they may deem proper, and Anderson to traverse the caveat, and the same to stand for trial in the Superior Court as though it had been decided in the Court of Ordinary.   Upon this appeal by consent entered at the time, it was the questions last stated originated.   The issues made by the pleadings, were as I consider them, two.

1. Upon the setting up of the previous probate, which was an issue of law, and in the nature of a plea in bar.

2. Upon the allegations in the caveat against the will, which was an issue of *devisavit vel non.*

These issues were formed on the rule and caveat of the petitioners on the one hand, and the answer of the executor on the other. The pleadings in the Ordinary, are not technical; in this case they presented with sufficient distinctness, two questions for decision; the first on the plea in bar, and the second on the will itself. The former was preliminary, and if decided in favor of the executor, would discharge the rule and the cause; but if decided against him, would leave the latter for a hearing and determination. No decision upon either was made by the Ordinary. And it is first claimed that for that reason the consent could not so carry the cause to the Superior Court as to give that Court jurisdiction. There are two constitutional provisions which relate to the appellate jurisdiction of the Superior Courts, in cases arising in the Courts of Ordinary.

There is a general grant of jurisdiction in cases which may be pointed out by law, which arise in inferior judicatories, in the following words: " And the said Superior Courts shall have appellate jurisdiction in such other cases as may be pointed out by law, in cases arising in inferior judicatories." *Cobb's N. D.* 1121. Whenever, therefore, the Legislature authorizes an appeal in cases arising in inferior judicatories, the jurisdiction granted by the Constitution attaches. By the Act of 1805, appeals are authorized from the decisions of the Courts of Ordinary. *Cobb's N. D.* 283. The jurisdiction of the Superior Courts, upon appeals from the Court of Ordinary, is thus founded in a constitutional grant. Not content with this general grant, the framers of the Constitution farther provided for appeals from the Courts of Ordinary, in these words: " The powers of a Court of Ordinary or Register of Probates, shall be vested in the Inferior Courts of each County, from whose decision there may be an appeal to the Superior Court, under such restrictions and regulations as the General Assembly may by law direct, &c." *Cobb's N. D.* 1122. Here is a special grant of jurisdiction, with power in the Le-

gislature to regulate the appeal and to impose such restrictions upon the exercise of the right of appeal, as they may direct. In 1805, the Legislature prescribed by law, the regulations and restrictions under which the right of appeal should be exercised. That Act provides, that in case either party in the Courts · of Ordinary, shall be dissatisfied with any decision thereof, such party may, within four days after the adjournment of the Court, be allowed to enter an appeal by paying all costs which may have accrued, and giving security to the Clerk of the Court for such further costs as may accrue by reason of such appeal. The Clerk is directed to transmit the appeal to the Clerk of the Superior Court of the County, ten days before the next Term. *Cobb's N. D.* 283. Now it is not to be questioned, but that a party is not entitled to an appeal from the Ordinary as matter of right, until there is a decision in that Court. The jurisdiction over wills and intestacies, is original and exclusive in the Courts of Ordinary, and cannot be exercised as an original jurisdiction by the Superior Court. No will, for example, can be brought primarily before the Superior Court for probate ; it can reach that Court only through the Ordinary. In strictness of law, there can be no appeal until the Ordinary has fulfilled its functions, and acted upon the question. What I mean to say is, that neither party can, as against the rights of the other party, transfer a cause pending in the Court of Ordinary, to the appeal, before a decision in that Court. Both the Constitution, and the law make the decision itself the matter appealed from. If demanded, it ought not to be granted ; and if granted, the Superior Court would unquestionably disclaim jurisdiction and dismiss it. If this could be done, the Superior Court would usurp the original jurisdiction which the Constitution has confided to the Ordinary. Is an appeal by consent before a decision had, violative of these propositions ? We think not. What is the construction of an agreement such as was entered into in this case, that the cause shall be transferred to the Superior Court, and that the issues joined shall be there tried ?

It is equivalent to a confession of judgment by the mov-

ant in favor of his adversary reserving the right of appeal. He declines the contest, and yields the points in issue. The other party, occupying the position of an appellee, on his part waives the payment of costs, and bond and security. In such a case, it is not the duty of the Court to proceed with the cause *in invitum*, any more than it is in the case of a confession. The Court consenting to the agreement, it is entered upon the minutes, and has the effect of a judgment appealed from. If so, the Court has exercised its jurisdiction, just as effectually in contemplation of law, as if the contestation had proceeded and the judgment had been formally pronounced. The right to confess a judgment cannot be questioned upon principle. It yields the whole that is claimed by the adverse party, and is as effectual for his rights as a verdict. And it is recognized by the Judiciary Act of 1799. (*Prince*, 427.) We have determined that a party may confess a judgment even after the cause is submitted to a Jury. (5 *Geo. R.* 298). We have also determined, that a party has the right to appeal from a confession, reserving the right of appeal. (1 *Kelly*, 278, 279.) In *Ross vs. Tedder*, we determined, that in a cause pending in the *Superior Court*, it is competent for the parties to appeal by consent without paying cost or giving bond, and without affidavit of inability to do so. In that case, we held that the costs and bond required by law are for the benefit of the appellee, and that he may rightfully waive them. (10 *Geo. R.* 426.) The decision in *Ross vs. Tedder*, was limited to cases brought in the *Superior Court*. We entertained doubts then, whether, in cases originating in other Courts, the Statute ought not to be strictly complied with, in order to give jurisdiction to the *Superior Court* on the appeal. After the argument of this cause, those doubts are removed. The giving bond and the payment of costs do not create the jurisdiction—it is in the *Superior Court* by constitutional grant. These things are conditions imposed upon the appellant by law for the benefit of the other party, and are precedent to the exercise of the right. These conditions he may waive. Consent cannot confer jurisdiction,

but if a party is exempted from a jurisdiction given by law, by reason of some personal privilege, that privilege he may waive, and doing so, the judgment rendered will bind him. 4 *Geo. R.* 47.   4 *McCord's R.* 80.   5 *Geo. R.* 497.   8 *Geo. R.* 83.

Upon these views, we are satisfied that an actual decision by the Ordinary was not necessary to the validity of this appeal, and that Judge *Starke* was right when he declined to sustain the *demurrer* to the plea on that ground.

Upon the other point, to wit : that the issue on the *caveat* was not appealed on, because that issue had not been reached when the consent was made, and might not have been reached at all, we cannot entertain a doubt.   That issue was made by the caveat and the executor's traverse of the caveat.   It was part and parcel of the cause, and it was not the less so because the matter pleaded in bar preceded it, and stood for adjudication as a preliminary question.   It is true that if the parties had not appealed and the case had taken the regular course, the Court of Ordinary might have determined the plea in bar in favor of the executor, and in that event no decision would have been made on the caveat, and upon it the jurisdiction of the Superior Court could not have been invoked.   But we have no right to assume that the decision of the Ordinary would have been in favor of the executor on the former question.   When the consent was made, both questions were on the record for consideration.   The appeal carried up the case as it stood—the whole case—and presented it for the consideration of the appellate Court, just as it stood below.   The determination of the issue on the caveat, the issue of *devisavit vel non*, was as much a contingency before the Superior Court on the appeal, as it was before the appeal before the Ordinary.   By the judgment of the law, as well as by the express agreement of the parties, we think the whole case went up.

[5.] The remaining point made in favor of the demurrer is, that conceding the judgment of the Superior Court to be a valid judgment, yet it is as to the complainants in the bill *res*

*inter alios acta,* because they were not parties to it.   The bill is filed  by the principal legatees under the will,  asserting its validity, and asking a decree that the executor, Anderson, account and pay their legacies.   Their own testamentary guardian (who, the bill charges, had declined to act as guardian) and some of the heirs at law, the caveators included, are made parties defendants.   If, indeed, they were not parties in the cause in which the  judgment was entered, yet it seems to us that they are in privity with the executor, and judgments bind parties and privies.   When this suit was brought against the executor, calling upon him to prove the will *per testes,* and at the same time caveating it, he was the qualified executor, and the will had been proven.   They recognize him as executor— they file  their bill against  him in that character—they claim under the  will, and he is the legal representative of the testator.   They were represented in  Court by him so far  as the validity of the will is concerned ; they had their day in Court, and were heard through him on the issue of *devisavit vel non.* It was competent, if they feared that the executor would not do them justice for them to have intervened  pending the caveat to  protect their interest.   Being infants does not vary the rule, for they  could have  appeared by a *guardian ad litem.*   They are precluded by the judgment against the executor unless they  can  show fraud and collusion on his  part. 1 *Williams on Executors,* 212.  *Billiston vs. Clarke,* 2  *Cas. temp. Lee,* 250.

[6.]  The  record discloses, that pending the suit on which the judgment was rendered, upon suggestion that their  father was dead,  and that their testamentary guardian had declined to act, Mr. Sandwich, the Clerk of  the Superior Court of Upson County, was appointed,  by Judge *Starke,*  their guardian *ad litem.*   But, conceding that fact, the counsel say, that he was not made a party and took no  part in the  cause. There is no  evidence that he declined the trust ; as Clerk of the Court, he was necessarily present, and being present and witnessing the proceedings, with a  right  to become a party, and  without being a party, with the right of cross-examining

witnesses, they are bound by the judgment, and to this point, see *Newel and King vs. Weeks,* 2 *Phillim,* 224. 1 *English Ecclesiastical Rep.* 239.

Let the judgment be affirmed.