72　725
112　495

## Barclay *et al. vs.* Kimsey *et al.*

1. As to the granting of letters of administration, a court of ordinary is a court of general jurisdiction, and its judgments are not void because the proceedings upon their face do not show all the pre-requisites of petition, publication, giving bond and the like. Nor is such a judgment of a court of general jurisdiction void because its proceedings fail to conform to the rules of practice prescribed by law for the transaction of its business. Such failures are irreg-ularities, and cannot be objected to except in the court giving the judgment, and on a proceeding for that purpose; and the pre-sumptions attaching to the judgments of any other court of gen-eral jurisdiction are applicable to such judgments of the court of ordinary.

(*a.*) This case differs from those in 67 *Ga.*, 227 *et seq.*; 9 *Id.*, 135; 12 *Id.*, 526.

(*b.*) It cannot be inferred that the bond required by law was not given, because it is not recited in the order appointing an administrator; nor can the judgment be collaterally attacked by evidence going to show a non-compliance with the law in this respect.

(*c.*) When the time prescribed by law for such publication had not elapsed before the first day of the regular term of the court of ordinary, and the court was adjourned to another day, and the publication having been completed, letters of administra-tion were granted, such judgment was irregular, but not void, and could not be collaterally attacked.

(*d.*) If administration were granted out of term, and such fact were made to appear, the judgment would be void; but courts of ordi-nary have power to grant letters of administration at an adjourned term thereof.

(*e.*) Where administration was granted in 1867, and no direct at-tack ever made thereon, nor any collateral attack until 1883, and during the intervening time important rights vested under the ad-ministration in innocent parties, it would require a clear and strong case to justify a court of equity in overturning it—a case of fraud actual and intentional upon the part of the claimants of right under it.

2. Equity has concurrent jurisdiction with courts of ordinary over the settlement of acounts of administrators.

(*a.*) Irregularities in the stating part of a bill or its prayer, or in the decree founded thereon, although grave, will not render the pro-ceeding void, at least as to persons acquiring rights thereunder *bona fide.*

(*b.*) An administratrix having been a party to a bill, and consented to a decree thereunder, the distributees of the estate, whether minors, married women or adults, are represented by her, and in

the absence of collusion between her and the other parties, are bound by the decree.

(c.) The administratrix being a party to the bill, and having been appointed guardian *ad litem* for the minors, and not declining to act for them in that capacity, no order making them parties by such guardian was necessary in order to bind them.

(d.) Where a decree has remained undisturbed for eleven years, and parties now complaining of it have received benefits under it, which they could not otherwise have obtained, and parties could not well be placed in *statu quo*, this court will be slow to upturn such a decree for mere irregularities. Such is the policy of the law.

3. There is no error in any of the rulings and charges of the court complained of.

May 13, 1884.

Administrators and Executors. Judgments. Courts. Ordinary. Equity. Before Judge SIMMONS. Habersham Superior Court. September Term 1883.

Reported in the decision.

EMORY SPEER    W. I. PIKE ; W. T. CRANE, for plaintiffs in error.

C. H. SUTTON; POPE BARROW, for defendants.

HALL, Justice.

This was an action in the statutory form for the recovery of real estate and *mesne* profits, brought by the children of John R. Stanford, deceased, who, together with his widow, were his heirs at law. An abstract of his title was attached to the declaration, and on the trial, which took place at September term, 1883, of Habersham superior court, the plaintiffs showed their relationship to the deceased, as set forth in their pleading; that he was in possession of the premises in question, and had title thereto at the time of his death.

The defendants, in reply, insisted that Stanford, at the time of his death, was greatly involved in debt; that his

estate was insolvent, was incumbered by mortgages to a very large amount, in favor of Hyatt, McBurney & Co. and Wiley, Banks & Co.; that these mortgages were in existence at, and prior to, the close of the late war; that he, in his lifetime, had sold and conveyed most of his lands, including that in dispute, to one Bradford, subject to the mortgages aforesaid; that his estate had been administered by his widow, who had been appointed to that office by the proper court; that she had never been discharged from the administration, and was still acting in that capacity; that, as such administratrix, she had brought suit on the equity side of the court, and had procured in said suit a decree cancelling the sale and conveyance of the lands by her intestate to said Bradford; that consequent upon the decree, a receiver was appointed to take charge and dispose of the property thus recovered, under the direction of the court of chancery; that Hyatt, McBurney & Co., having foreclosed their mortgage by a decree in a suit instituted by them in the circuit court of the United States for the northern district of Georgia, brought a suit on the equity side of the superior court of Habersham county, against the receiver having charge of the estate of their debtor, against the administratrix upon his estate, and the attorneys and others claiming liens upon the same for services rendered in restoring the property conveyed to Bradford to the estate, as well as against Bradford, who claimed a lien on account of payments he had made in carrying out his contract with Stanford, and which, after his death, had been cancelled. To this bill a demurrer was filed, which was sustained. Exceptions were taken, and that decision was carried to the Supreme Court by writ of error. After reaching the Supreme Court, the case was withdrawn by consent of all parties, for the purpose of having the judgment sustaining the demurrer set aside, and the case re-instated on the docket of the superior court, as it was prior to the hearing of and judgment on the demurrer. When the case was restored to that court, this

agreement was carried into effect. Wiley, Banks & Co., who held the superior lien upon the land, were made parties to the proceeding. The widow of Stanford, who was already a party to the bill, both in her individual right and in her representative character, was appointed guardian *ad litem* for the minor children, who were thus, and only thus, likewise made parties. No other changes were made in the statements and charges contained in the bill which sought to restrain the sale of any property by the receiver, and attacked the charges upon the estate on account of the liens and claims arising thereon subsequent to intestate's death, the widow's claim of dower, and the claim on behalf of the family to homestead and exemption, and prayed the satisfaction of complainant's debt, and for general relief. The various parties to the suit then agreed upon a decree, and in pursuance of that agreement, a verdict was taken, making provision for an exemption and homestead for intestate's family, also for the payment of Bradford's claim, and directing a distribution of the estate in kind between these parties and the various creditors in the manner prescribed therein. The defendants in the present action claim under the party to whom the land in dispute was assigned by this decree. When the decree was offered in evidence, together with the proceedings on which it is found, the plaintiffs objected thereto, upon the following grounds:

First. Because the decree conveyed no title out of Stanford's estate and cannot operate as title to defendants.

Second. Because the decree did not bind plaintiffs, they not being parties to the bill.

Third. Because the pleadings in the bill filed by McBurney & Company and Wiley, Banks & Company did not authorize such a decree, there being no prayer for such, and no allegation relative thereto.

Fourth. Because the court could not render such a decree, dividing out the lands in parcels, without any price being fixed thereon.

Fifth. Because the decree is void, for the reason that the bill, before said decree was rendered, had been carried to the Supreme Court upon a writ of error sued out by the complainants from a decision rendered by Judge Davis, and withdrawn from the Supreme Court by the parties to the bill, and re-instated in Habersham superior court for final settlement, as appears from the records tendered in evidence.

Sixth. Because the decree is void, on the ground that the court had no jurisdiction of either of the parties or the subject-matter

Seventh. Because the decree did not bind the plaintiffs, they not having been parties to the bill, nor having had any knowledge of the case being in court until long after said decree was rendered.

Eighth. Because, after the death of John R. Stanford, the title to his real estate vested in his heirs at law, these plaintiffs, and could not be divested, except by regular sale as prescribed by law.

Ninth. Because the decree did not bind these plaintiffs, they not being parties thereto; neither can it be received as evidence against them in this case.

Tenth. The decree is void because the court transcended its authority in making it.

Eleventh. Because the defendants cannot go into a court of equity to exhaust the estate of John R. Stanford until after judgment and a return of *nulla bona* thereon to the execution.

Twelfth. The decree is void because Mrs. Stanford is not lawfully appointed administratrix on the estate of the deceased.

The decree and bill were admitted over these objections, as was also the defendants' deed made thereunder, and the plaintiffs excepted

The plaintiffs also attacked the administration upon the estate of the intestate, and offered in evidence the record of the court of ordinary to show that Mrs. Stanford

had not been appointed an administratrix, the minutes showing she had been appointed at an adjourned term of said court, and also showing the court had been adjourned to November 11th, 1867, on which day she was appointed.

The minutes were objected to by defendants' counsel, and objection sustained.

The evidence offered is as follows: A certified copy from the minutes of the court of ordinary of Habersham county, as follows:

"Minutes Court Ordinary, November Term, 1867—Present W. S. Erwin, Ordinary.

"Ordered that this court be adjourned until Monday the 11th day of November, 1867.                    W. S. ERWIN, Ordinary."

"Minutes Court, Ordinary Adjourned Term, November 11, 1867.

Whereas, Mrs. Cordelia S. L. St. Stanford, having hitherto made application to this court for letters of administration on the estate of John R. Stanford, deceased, and the application having been published the time prescribed by law, and no objection of file or otherwise having been made. It is ordered by the court that said letters be granted." (Not signed by ordinary.)

"I, Cordelia S. L. Stanford, do swear that John R. Stanford, deceased, died without any will, so far as I know or believe, and that I will well and truly administer on the estate of said deceased, and discharge, to the best of my ability, all my duties as administrator, so help me God.

Sworn to and subscribed before me, this November 11th, 1867.
                    C. I. ST. L. STANFORD."

"Ordinary's Office, Georgia, Habersham County, Clarksville, Ga.

I, Robert N. Groves, ordinary of said county, do hereby certify that the foregoing copy of order and oath is a correct copy from the minutes of this court.

Given under my hand and seal of office, this 16th day of November, 1881.                    ROBERT N. GROVES,
                    Ordinary, (LS.)"

Plaintiffs then offered Robert N. Groves, ordinary of said county, as a witness to prove that there was no further evidence of record in said ordinary's office of Mrs. Stanford's qualification as administratrix of said estate, no bond or letters to be found of record;—which was, upon ob-

jection of defendants' counsel, rejected by the court, and plaintiffs excepted.

Plaintiffs offered in evidence copies of the Southern Watchman, a newpaper published in Athens, Georgia, which contained the advertisement of the application of Mrs. Stanford for letters of administration upon the estate of John R. Stanford, which advertisement showed that the notice required by law had been published for twenty-five days, to the next regular term of the court, which was on the 4th day of November, 1867, which was, upon objection of defendants' counsel, rejected by the court, and the plaintiffs excepted, and which advertisement is as follows:

"GEORGIA—Habersham County.

Whereas, Mrs. Cordelia D. Stanford applies to me for letters of administration on the estate of John R. Stanford, late of said county, deceased: These are therefore to cite all persons concerned, to show cause, if any they have, within the time prescribed by law, why said letters should not issue to the applicant. Given under my hand, this the second of October, 1867.

W. S. ERWIN, Ordinary."

October 9th, date of first insertion.

All of this was excluded by the court, and plaintiffs excepted.

There was a verdict for the defendants, and the plaintiffs filed their bill of exceptions, and assign the following errors upon the several rulings and charges of the court, made and given on the trial:

(1.) Because the court admitted the record, to-wit, the bill and decree, in evidence, over the objection of plaintiffs' counsel thereto.

(2.) Because the court excluded the evidence attacking the appointment of the administratrix.

(3.) Because the court charged as follows : " I charge that these plaintiffs cannot recover, if you find that this administratrix was then and is still acting as such, and has never been discharged. The right to recover is in the administratrix, unless the heirs at law allege and prove that she refuses to bring this suit."

(4.) Because the court charged as follows: "That the decree mentioned between these parties is a valid decree, and if the defendants purchased the lands from W. S. Erwin and paid value for it, they got a good title as against these plaintiffs."

(5.) Because the court charged as follows: "Whether the decree was valid or not, if W. S. Erwin went into possession *bona fide* under this decree, and he afterwards sold to these defendants, and they have been in peaceful, quiet and adverse possession of this land for seven years before the bringing of this suit, then the decree would be color of title at least, and seven years of adverse possession *bona fide*, under color of title, and would bar the plaintiffs from recovery in this case."

(6.) Because the court held "that, after the bill had been dismissed by the court for want of equity, and because there was an adequate remedy at common law, the superior court of Habersham county could take jurisdiction and re-instate said case and make the decree thereon."

(7) Because the court held that, under the pleadings of the bill filed by Hyatt, McBurney & Co., the superior court of Habersham county had jurisdiction to divide out in kind the real estate of deceased among his creditors, by parcel, and without a sale, as provided by law relating to the sale of intestate estates, and further holding that the minor children of said Stanford, and the other children, who are married women and not parties to said bill, were bound by the decree thereon, and that the title to said real estate was divested by said decree.

This being one of a number of cases brought by the plaintiffs against different defendants to recover most of the landed estate which was claimed to be in their ances-tor at his death, and all depending upon the same principles, has been fully, ably and exhaustibly argued, and our decision is invoked upon all the questions made, with a view to the settlement of the entire litigation growing out of the administration and distribution of the intestate's

estate. Commending, as we do, the motive which prompted this request, we will endeavor, as far as we are authorized from the record before us, to comply with it.

1. The grounds insisted upon by the plaintiffs in argument are, first, that the grant of letters of administration on the estate of Stanford was void, in that there was no petition filed making application for the same; that the citation, upon which the letters were granted, was published only twenty-five days previous to the commencement of the regular term of the court of ordinary, at the adjourned term of which the administration was granted and the administratrix was qualified by taking and subscribing the oath, it not appearing that she gave the bond also required by the statute. That the party appointed acted in the administration, and by means thereof brought back to the estate the property involved in this litigation, and which had been parted with by the intestate in his lifetime, is not questioned. Where the appointment was used to collect the effects of the estate, it is treated as valid; and if available for that purpose, it would seem that it should be equally so for the purpose of distributing them among the persons entitled thereto; this only by way of general remark. The precise question we are called upon to determine is, whether this is, for any or all the causes assigned, a void or merely an irregular or voidable administration.

It is true that in *Fisschesser vs. Thompson*, 45 *Ga.*, 459, a majority of this court held that an application for a twelve month's support of the family of a deceased person should be made by a petition in writing, and notice should be given to the representative of the estate, if there be one, and the order of the ordinary should always recite the names of the persons notified, and that when the order of the ordinary failed to recite these prerequisites, the judgment was void as against creditors of the deceased, who had no notice of the application, and they might attack it whenever and wherever presented. This

was the view of Warner, C. J., who thought, as he else-
where expresses it, "that the judgment carried its death
wound upon its face." Montgomery, J., concurred in the
judgment, for the reason that the proceeding was "a spe-
cial one before the ordinary, as contradistinguished from
the court of ordinary," and everything required by the
Code to be done should appear on the face of the pro-
ceedings, in order to give the ordinary jurisdiction. Mc-
Cay, J., deeming this a proceeding before the court of
ordinary, dissented, on the ground that courts of ordinary
in this state are courts of general jurisdiction, and their
judgments are not void, because the proceedings upon their
face do not show such prerequisites; that the judgment
of a court of general jurisdiction is not void, because its
proceedings fail to conform to the rules of practice pre-
scribed by law for the transaction of its business; such
failures are irregularities, and cannot be objected to, except
in the court giving the judgment, and on a proceeding for
that purpose; such judgments of the court of ordinary
are entitled to the presumptions allowed by law to the
judgments of any other court of general jurisdiction. In
granting this administration, the court of ordinary acted;
it was not the action of the judge, but of the court. Code,
§331. This dissenting opinion, we are satisfied, embodies,
in a concise and comprehensive form, the effect to be given
to judgments of the court of ordinary, the presumptions in
their favor, and the mode in which they must be attacked
and set aside, as has been since declared by this court.

This is a very different question from that determined in
*Head vs. Bridges*, 67 *Ga.*, 227, where it appeared affirm-
atively from the recitals in the judgment, that the court
rendering it had not taken the steps requisite to confer
upon it jurisdiction to act in the matter; this court held
the proceeding void, but had there been no such recital
their holding would have been otherwise. See *Id.*, 233,
where the authorities are collated and commented on by
Crawford, J., as well as the concurring opinion of Jackson,

C. J., p. 237, and the dissenting opinion of Speer, J., p. 239.

What has been already said applies with equal force to the other grounds of objection to this administration.

It is quite true that the order appointing the administratrix does not recite that she gave the bond required by law, but from that omission it cannot be inferred that she did not give it, nor could the judgment that appointed her be collaterally attacked by proof going to show a non-compliance in this respect.

If the administration was granted upon an insufficient citation, as to the length of time it was published, this fact could not be shown collaterally. 67 *Ga.*, 103, 106; 65 *Id.*, 412. If, however, the grant was made out of term, and that fact was made to appear, it would render it void- *Bell vs. Love*, this term. But such is not the case here; it was made at an adjournment of a regular term of the court, and when so made the citation had been published the requisite length of time. The citation should be published for thirty days, and at the first regular term after the expiration of that time, it should be heard or regularly continued. Code, §2503. If the time of publication expires during the continuance of the regular term, would action upon the application be in order at any subsequent term, unless it was regularly continued? This may be doubtful. The question, then, is, must the time of publication of the citation expire before the first day of the term? No case has been produced directly to that effect, and the law regulating the times at which the terms of the court of ordinary are to be held, the keeping open the office of the ordinary and the business he may transact between terms, together with the adjournments of the regular terms of that court, might lead us to a conclusion somewhat different from that insisted on by the plaintiffs. These courts are required to be held on the first Monday of each month by the ordinary. Code, §4111. This official is required to keep his office open for the transaction of all business,

at all times, except Sundays and holidays; but he can admit no will to record, nor can he grant letters testamentary, or of administration, or guardianship, or letters dismissory, or any order for the sale of real estate, except at a regular term of the court. *Id.*, §4112. If, from any circumstances, he should fail to hold the court at the regular term, or at any adjourned term, or the business of the court requires it, he or his deputy clerk may adjourn the court to such times as he may think proper, provided such adjournment is entered on the minutes of the court. *Id.*, §4113. Now, what business is it that would require the adjournment of the court, in order that it might be legally transacted? Clearly it is only such as could not be attended to between terms, and as is specifically mentioned in section 4112—the admission of wills to record, the grant of letters testamentary, of administration, guardianship, etc. From this it seems clearly and irresistibly inferable that any of these acts may be done at the adjournment of a regular term, ordered in the manner prescribed by law.

If not the identical question here presented, one bearing a close and almost perfect analogy to it was determined by this court in *Smith et al. vs. Thompson*, 3 *Ga.*, 23, and afterwards cited and approved, 58 *Ga.*, 208, 211. The principle in those cases to some extent controls this, and makes this grant of administration, so far as concerns the publication of the application for the same, sufficiently regular and legal to save it from being treated as a mere nullity.

If the publication of the citation should have run full thirty days prior to the commencement of the term, in order to perfect service of the process, and we are of opinion that this is the proper practice, then the notice did not fulfill the requirements of the law, but was an imperfect attempt to do so, and had objection been made, no judgment could have been properly rendered on it at the adjourned term. Like similar cases of defective service of process returnable to the superior court, it would, under the law, have gone over to the next succeeding term, yet

the fact that it was acted on at an improper time, during the regular term, would not render the action void. It was not essential that it should run the entire period, in order to give the court jurisdiction. The judgment rendered was certainly irregular but not void, and the defect could be cured by acquiescence and ratification, express or implied. At all events, it could not be collaterally attacked and annulled.

The cases of *McGee vs. Ragan*, 9 *Ga.*, 135, and *Torrance vs. McDougald*, 12 *Id.*, 526, cited by the learned and indefatigable counsel for plaintiffs, seem to us distinguishable from this in essential particulars. In each of them it affirmatively appeared from the proceed-ings that other persons than those making application for the administration, and in whose names the citation was issued and published, were appointed after a term or more had intervened between that at which the applicants should have received their appointment, and when the appointment was made. Consequently the administrations were granted without citation or notice, and were rightly held to be void.

This administration was taken out in 1867, and up to this hour no direct attack has been made upon it; nor un-til this trial, which occurred in 1883, was it even collat-erally assailed. During this long period many and import-ant rights have vested under it in innocent parties ; and it would require a very clear and strong case to justify any court in overturning it, a case of fraud, actual and in-tentional upon the part of the claimants of rights under it, fully as strong and clear as that presented by the case of *McArthur and another vs. Matthewson and another*, 67 *Ga.*, 134, 144. The record presents no such case for relief, either in a court of law or a court of equity.

2. The decree from which the defendant Kimsey derives title, which was entered in 1872, was, at the trial of the pres-ent case, objected to as void, because there were no allega-tions or statements, nor any prayers in the bill upon which

it could be rendered; because it had been taken out of the superior court and carried by writ of error to the Supreme Court, and could not by an agreement be re-instated in the former court; that by the writ of error the superior court lost its jurisdiction of the case, which could only be restored by the order and judgment of the Supreme Court, reversing or affirming the judgment on demurrer; because the court had no jurisdiction of the subject-matter or parties, and no power or authority to divide lands belonging to the estate of Stanford among his creditors and others having claims thereon; and because the plaintiffs in this common law suit were necessary parties to such proceeding; that they were, in fact, never made parties thereto, and were in no manner represented or heard in the trial of the same.

That the court of equity of Habersham county had jurisdiction concurrently with the court of ordinary, both of the subject matter and parties, is evident from §2600 of the Code. 45 *Ga.*, 97; 50 *Id.*, 264. The defects in the stating part of the bill and in the prayer, as well as the objections to which the decree is open, amount to great irregularities, but do not render the proceeding void, at least as to persons acquiring thereunder *bona fide*. 50 *Ga.*, 566; 53 *Id.*, 209. This court in *Ross and others vs. The Southwestern Railroad Company and others*, 53 *Ga.*, 514, went much further than the exigencies of this case require in protecting the rights of parties who were not so clearly shown to have been *bona fide* purchasers as was this defendant, under a decree founded upon proceedings much more anomalous and irregular than in the present instance; the decree in that case was declared irregular and unwise, but not void.

The administrator of Stanford was a party to the bill, and consented to the decree. His distributees, whether minors, or married women, or adults, were represented by her, and in the absence of collusio between her and the other parties, which is not pretended, are bound by the

decree (61 *Ga.*, 381 ; 64 *Id.*, 670); and being a party to the·
suit, she was appointed guardian *ad litem* for the minors,.
and did not decline to act for them in that capacity; no ·
order making them parties by their said guardian was nec-
essary to bind them. *Brown vs. Anderson*, 13 *Ga.*, 171,
is directly upon the point.

By this decree, these plaintiffs received benefits which
they could not have obtained without liberal concessions
made by the creditors of their father. By it his debts
were paid out of his effects, and provision was made, by
way of homestead and exemption, for the family. These
debts were created prior to the enactment of our present
liberal exemption and homestead law, and were much in
excess of the assets liable to their payment. This decree
has remained undisturbed for eleven years, and were it·
never set aside, it would probably be impossible to put the·
parties to it in *statu quo*, and if this were practicable, it·
would not inure to the benefit of those complaining of it..
We think that they would be seriously hurt by such a.
course ; that the strict legal administration which it would
necessitate would deprive them of the advantage thereby
obtained. It would unsettle rights upon which others have·
securely reposed, and render unstable the judgments and
decrees of courts rendered for the final settlement of such.
rights.

Statutes of limitation have ever been regarded as meas-·
ures of repose ; the law has been aptly characterized as
*saluberrima lex.* In furtherance of this policy, all bills of
review, or for a new trial, in a court of equity (unless the
latter be founded on proof of perjury in a material witness·
for the prevailing party), must be brought within three·
years after the judgment or decree has been rendered..
Code, §2919. Code, §4220, prescribes the same limitation.
as to bills of review, pure and simple, and excepts from ι
the bar cases of infancy, coverture, imprisonment and.
insanity, but requires them to be brought within three·
years from the removal of either of those disabilities.

That this policy has been steadily pursued and rigidly applied by this court, see *Ross et al. vs. The Southwestern Railroad et al., ut sup.*

3. The settlement of these questions dispenses with the necessity of considering and determining others made by this second. It is immaterial whether the defendant s deed be good color of title upon which to found an adverse holding, or whether the plaintiffs are authorized to mainta:n their suit, irrespective of the rights or action of the adm.n. istrator. We find no error in any of the rulings or charges of the judge, of which the plaintiffs have complained.

Judgment affirmed.