JONES *et al. v.* LAMAR *et al.*

(*Circuit Court, S. D. Georgia, W. D.* April 20, 1888.)

1. EXECUTORS AND ADMINISTRATORS—ACTIONS AGAINST—BILL FOR RENEWAL OF MORTGAGE—JURISDICTION—PARTIES.

A. sold land to B., having given a prior mortgage to C. B. died. A. and C. filed a bill against the administratrix of B. to "authorize" her to take up the mortgage, and give a new mortgage therefor. The bill and answer were filed, and the verdict and decree granting the prayer rendered on the same day. The children and heirs of B. were not parties or represented. It did not appear that A. was unable to pay off his mortgage. *Held,* that the court had no jurisdiction to authorize such a proceeding, and as to the mortgage in the hands of A., who had become the owner by assignment, it was null and void as to the children.

2. SAME—POWERS OVER REAL ESTATE.

Under the laws of Georgia, realty descends directly to the heirs, subject to be administered by the legal representative for the payment of debts of the estate, and the purposes of distribution only.

3. SAME—CONSTRUCTION OF STATUTES.

Statutes giving administrators power over realty are in derogation of the common law, and must be strictly construed; and the administratrix is not the legal representative of the heirs when acting without the scope of her limited powers.

4. SAME—POWER TO SELL AND INCUMBER REAL ESTATE.

Under the laws of Georgia an administratrix is not authorized to dispose of the real estate of her intestate at private sale, nor to create any incumbrance on the estate by note, mortgage, or otherwise.

5. SAME—EQUITY JURISDICTION.

Under the laws of Georgia, equity cannot interfere with the regular administration of estates, except upon application of the representative for construction and direction; for marshaling the assets; or upon application of any person interested in the estate, where there is danger of loss or other injury to his interest.

6. SAME.

In the absence of statutory authority the equity courts of Georgia have no power to authorize an administratrix to incumber the estate of her intestate by a mortgage, or to change the priority and dignity of debts against the estate.

7. SAME—AUTHORITY TO COMPROMISE.

The authorization of an administrator to compromise contested and doubtful claims against the estate is no warrant for illegal transactions in the process and result of the settlement.

8. SAME—PERSONAL LIABILITY—EXECUTION OF NEGOTIABLE PAPER.

If an administratrix make, indorse, or accept negotiable paper, she is, *prima facie*, liable individually, even if she signed as administratrix, and the estate is not bound, and in this case a *prima facie* case is made against her as to her individual interest which she is called upon to meet.

9. MORTGAGES—PAYMENT—ASSIGNMENT.

When a mortgage debt is paid by one in equity bound to pay it, an assignment of it to him upon payment operates as a discharge, and he will not in a court of equity be allowed to hold it as a subsisting incumbrance. and such court will look through the entire transaction, and fix the duty of payment where it belongs.

(*Syllabus by the Court.*)

In Equity.

*Evarts, Choate & Beaman, George A. Mercer*, and *Henry R. Jackson*, for complainants.

*Lawton & Cunningham, Chisholm & Erwin*, and *F. G. Du Bignon*, for defendants.

SPEER, J. Harriet Cazenove Jones and Frank Cazenove Jones, citizens of New York, as administrators with the will annexed of Gazaway B. Lamar, have brought their bill against Caroline A. Lamar, Eliza A. Cunningham, Jane C. Cunningham, Caro N. Du Bignon, Georgia G. Lamar, and Mary L. Lamar, citizens of Georgia, and aver as follows: On the 14th of January, 1861, Gazaway B. Lamar gave to the Bank of the Republic of New York his bond and mortgage for $164,000, payable to himself as president of the Bank of the Republic. The mortgage created a lien upon certain real property then owned by the mortgagor. This realty was situated in the city of Savannah, and was known as "Lamar's Wharves, Press, Warehouse," etc. On the 31st day of December, 1863, Gazaway B. Lamar conveyed to Charles A. L. Lamar certain lands in the city of Savannah, including the property covered by this mortgage to the Bank of the Republic, and it is charged that the purchaser, Charles Lamar, bought with knowledge of the mortgage, and remained in possession of the property until his death, without satisfying the same. Charles Lamar departed this life April 16, 1865, intestate, and his widow, Caroline A. Lamar, was appointed administratrix upon his estate the 6th of November, 1865, and as such administratrix became possessed of the land covered by the mortgage to the Bank of the Republic, and subsequently conveyed by Gazaway B. Lamar to her intestate. On the 10th day of May, 1866, the Bank of the Republic obtained a judgment of foreclosure of the mortgage, and on the 3d day of January, 1867, the *fi. fa.* was issued thereupon and was levied upon the mortgaged premises. On the 10th day of January thereafter, Mrs. Lamar, as administratrix, interposed a claim to the land as the property of her husband's estate. While the claim was pending, the Bank of the Republic, then the National Bank of the Republic of New York, and Gazaway B. Lamar, as parties complainant, brought a bill in equity against Caroline A. Lamar

as administratrix, in the superior court of Chatham county, proposing to compromise with the estate she represented the mortgage indebtedness of Gazaway B. Lamar to the Bank of the Republic, which constituted a lien upon the lands bought by C. A. L. Lamar from Gazaway B. Lamar. This bill was filed March 6, 1868. The bill here on trial alleges that the answer of the administratrix to the bill in Chatham superior court was sworn to March 6, 1868, and was duly filed; that the issues raised were submitted to a jury, and that the jury found that Charles A. L. Lamar received the deeds to the land with full notice of the previous mortgage of Gazaway B. Lamar to the Bank of the Republic; and that the lands were liable upon that mortgage for $82,000, with interest from January 14, 1861, and costs; and that it would be to the benefit of the estate to compound the indebtedness by the payment of $80,000, with interest from February 21, 1868, and to secure the same to the National Bank of the Republic of New York by the execution of the mortgage now sought to be enforced. On March 6, 1868, a decree was entered upon the verdict, which provided that Caroline A. Lamar, as administratrix, should execute and deliver a bond and mortgage for $80,000 to the Bank of the Republic, and upon the delivery of such new bond and mortgage the old bond and mortgage should be delivered up to be canceled. She did this as directed, and on the 17th day of March, 1868, executed and delivered to the National Bank of the Republic of New York a bond and mortgage for $160,000, conditioned for the payment of $80,000, with interest from February 21, 1868; the principal to be paid in equal annual installments of $8,000 each. The mortgage embraced the lots and wharves in the city of Savannah, bounded on the north by the Savannah river, east by the lot of the Hydraulic Cotton-Press, south by a street, and west by Willinik's lot, and also the lots lying south of the same and having eastern boundary, and all those lands lying east and south of the same, containing 75 acres, more or less, except a certain flour-mill, and the lot on which it is erected. A copy of the bond and mortgage is attached. Upon the execution and delivery of the new bond and mortgage, the old bond and mortgage were surrendered by the said Bank of the Republic of New York, and the new bond and mortgage were duly placed upon record in the county of Chatham. The bill does not state to whom the old bond and mortgage were surrendered.

The bill now at issue further alleges that on the 7th day of May, 1874, the new bond and mortgage were, for value received, duly assigned to Gazaway B. Lamar, which assignment is also of record in Chatham county, and a copy of which is attached. Gazaway B. Lamar continued owner, it is alleged in his own right, of the bond and mortgage up to the time of his death, which occurred in the city and state of New York on the 5th day of October, 1874. He died testate, and the complainants were appointed administrators with the will annexed. By virtue of this administration they acquired possession of the bond and mortgage, and became charged with the duty of collecting the same. On the 7th day of September, 1881, Caroline A. Lamar, as administratrix, sold 13.77 acres of the land covered by the mortgage, and received therefor the price of $13,770, and

on the 17th of September thereafter, sold three acres and a fraction, and received $5,000, making the sum of $18,770. This was done by authority of the Ordinary of Chatham county. The administratrix has never paid or accounted for any portion of the proceeds of these sales. On the 5th day of July, 1882, Caroline A. Lamar, as administratrix, petitioned the ordinary of Chatham county for a discharge from her trust, upon the ground that she had fully and faithfully administered said estate up to the final settlement; and on the 10th day of January, 1883, was discharged, the bond and mortgage remaining unpaid. Pending the discharge, on the 27th day of July, 1882, the heirs and distributees of the estate of Charles A. L. Lamar, who are the parties defendant to this bill, entered into a family arrangement, and agreed with each other that the estate should be kept together undivided, to be held by them as tenants in common, each heir to own her undivided portion,—that is to say, the widow, Caroline A. Lamar, one undivided one-fifth interest of the whole, and each child one undivided part of the remaining four-fifths, all of which will more fully appear by reference to the agreement, a copy of which is attached.

The complainants aver that they were residents of New York, and had no knowledge of the discharge of the administratrix or the family agreement, and they protest that they should have no effect on complainants' rights, as the representatives of the estate of Gazaway B. Lamar; that Caroline A. Lamar is accountable to them for the proceeds of the mortgaged land that went into her hands; and that, if she distributed the proceeds to the heirs at law, each one is accountable for the proportion of said proceeds so received, and if the lands should fail to produce a sufficient amount to satisfy the demand, attorney's fees, commissions, charges, and costs, that the several parties defendant will be liable and bound to contribute from the assets and property of the estate received by them, outside of the property covered by the mortgage, sufficient sums and amounts to pay off any deficiency, and to make good the entire amount due on the bond and mortgage. That amount is the principal sum of $64,019.88, besides interest. The prayer is for the foreclosure of the mortgage, and that the lands be subjected to the lien thereof, and that Caroline A. Lamar be held to account for the proceeds of all the lands embraced in said mortgage, and that the other defendants, to-wit, Elizabeth A. Cunningham, Jane C. Cunningham, Caro N. Du Bignon, Georgia G. Lamar, and Mary S. Lamar, may be held to account for any portion of the proceeds paid to or received by them; and that they may be compelled to contribute such sums as may be necessary to supply any deficiency after sale on foreclosure, and to pay the full amount due on the bond and mortgage; that after the sale of the mortgaged premises execution may issue for the collection of any balance, and for general relief. The bill waives discovery. On the ——— day of February, 1888, the cause came on for final hearing. Plaintiff introduced the letters of administration of the complainant, and tendered the bond and mortgage of Caroline A. Lamar, as administratrix, sought to be foreclosed. This was objected to upon the ground that the administratrix

had no authority to create a lien of this character upon the estate in her hands. In reply to this objection the complainants offered a certified copy of the bill filed in the superior court of Chatham county, Ga., and the decree rendered thereon, heretofore referred to. The bill was brought by the National Bank of the Republic and Gazaway B. Lamar against Caroline Lamar, as administratrix of Charles A. L. Lamar. It alleges the facts with reference to the execution by Gazaway B. Lamar of the original mortgage to the Bank of the Republic, substantially as hereinbefore set forth; the foreclosure, attempted sale, and interposition of claim by the administratrix. It further alleged that the lien of the National Bank of the Republic was valid against the property, and that, while Caroline A. Lamar interposed her claim to the mortgaged property under a deed of warranty from Gazaway B. Lamar to her intestate, Charles A. L. Lamar, that Charles A. L. Lamar had distinct notice of the existence of the mortgage, and accepted the conveyance with the incumbrance upon the property. The bill further alleged that "in a spirit of fairness and conciliation they [complainants] have proposed to the said Caroline A. Lamar, administratrix, etc., to discharge said estate and the mortgaged property from any other claim of the National Bank of the Republic, on the payment by the administratrix of the sum of $80,000, or when such sum should be secured by bond and mortgage on the real estate and improvements hereinbefore described, and on all the lands formerly owned by Gazaway B. Lamar, and by him conveyed to Charles A. L. Lamar" by the deed of warranty aforesaid. And, further, the bill of 1868 continued: "G. B. Lamar has offered, and does now offer, to said administratrix that when said sum of $80,000 is paid, or secured to be paid, out of the said estate of C. A. L. Lamar, so that said sum of $80,000 can be credited on the bond of the said G. B. Lamar to the National Bank of the Republic, the estate of C. A. L. Lamar shall be credited with the said sum of $80,000, on account of any claims of the said G. B. Lamar against said estate of C. A. L. Lamar, which your orator, G. B. Lamar, proposes, that the said mortgaged property hereinbefore described, together with the other lands to be also mortgaged, shall be thenceforth discharged and free from the payment of any claims whatever, present or future, of the said G. B. Lamar, and also from any judgments that may hereafter be obtained by the said G. B. Lamar against said estate." The bill recites that Mrs. Lamar, as administratrix, refused and declined to comply with this "reasonable request and offer," "at times pretending that although the proposition made by your orators to release the property of the said estate of C. A. L. Lamar, on the terms hereinbefore set forth, was fair and beneficial to said estate, yet the said Caroline A. Lamar, as such administratrix, has no authority to accede to the same, and to bind said estate by executing a bond and mortgage as in the manner aforesaid." The bill charges that she did have authority to "compound said claim," and to execute the bond and mortgage. The prayer of the bill is that Mrs. Lamar may full, true, direct, and perfect answers make to all and singular the matters and things stated; that the mortgaged property may be decreed sub-

ject to the debt due to the National Bank of the Republic; and that the said Caroline A. Lamar may be authorized and empowered by the order and decree of this honorable court to execute a bond with a mortgage on the wharves and press and warehouse and appurtenances, which shall bind said estate to the National Bank of the Republic; and that complainants may have such further release in the premises as the nature of the case may require. The bill is signed by the solicitors for the complainants. It does not appear to be sworn to. To this bill Mrs. Lamar, as administratrix, filed an answer in which she "admits the proposition for compromise on the part of the complainants, as set forth in the bill." She does not expressly admit in her answer that Charles A. L. Lamar was indebted to Gazaway B. Lamar.

The verdict of the special jury in the state court finds that Charles A. L. Lamar received the original conveyance from Gazaway B. Lamar with full notice of the previous mortgage; and further finds that the amount for which the said property is liable under the said mortgage is $82,000, with interest from the 14th day of January, 1861; and the foreclosure of said mortgage; and that it will be for the benefit of the said Charles A. L. Lamar that the said debt be compounded by the payment by said estate of the sum of $80,000, with interest from the 21st day of February, 1868, or the securing of the same to the said National Bank of the Republic by bond and mortgage, as suggested in the said bill of complaint, and upon the terms and conditions therein set forth. The decree thereupon ordered that Caroline A. Lamar, as administratrix, is authorized to compound the amount due to the said National Bank of the Republic on the mortgage referred to, by making and delivering to the said National Bank of the Republic, as administratrix as aforesaid, the bond for the penal sum of $160,000, conditioned to be void upon the payment of the sum of $80,000, with interest from the 21st day of February, 1868, and specified the manner in which the payment should be made; and the said mortgage shall have and constitute a valid lien upon said property. And it is further ordered, adjudged, and decreed that the said National Bank of the Republic shall, upon the making and delivering of the said bond and mortgage, deliver up to the said Caroline A. Lamar, as administratrix as aforesaid, to be canceled, the mortgage of the said Gazaway B. Lamar to the said National Bank of the Republic, mentioned in the said bill of complaint; and she shall also return to the office of the clerk of this court the execution taken out in pursuance of the foreclosure of that mortgage, and there to remain forever inoperative, and of no effect; and shall also give credit to the said Gazaway B. Lamar for the said sum of $80,000 as paid on the said 21st day of February, 1868, on the execution issued in pursuance of the judgment rendered against him for the debt which was secured by his said mortgage; the said execution to remain of force for the unpaid residue of the said debt. It is further ordered and decreed that the said Gazaway B. Lamar shall give credit to the estate of the said Charles A. L. Lamar for the sum of $80,000 paid on the said 21st day of February, 1868, upon any and all claims he may have or assert against said estate, and that the said prop-

erty mortgaged by the said Caroline A. Lamar, administratrix as aforesaid, by authority of this decree, shall be henceforth entirely released from all liability for any debt which may hereafter be found due for any cause existing at or before the date of this decree from the said estate to the said Gazaway B. Lamar, and that no judgment which may hereafter be rendered in favour of the said Gazaway B. Lamar against said estate upon any claim set up by him for any cause existing at or before the date of this decree shall bind or have any lien on the said property. This decree was signed by W. B. FLEMING, Judge, March 6, 1868. It will be observed that this verdict and decree make no finding or adjudication that any indebtedness existed from Charles A. L. Lamar to Gazaway B. Lamar prior to the death of Charles A. L. Lamar. It will be observed also that the entire arrangement was consummated on the eleventh day after the bill was filed. It was further offered in evidence that Gazaway B. Lamar, on the ——— day of ———, 1868, gave a credit by an entry in a book of accounts which he kept of his business, to the estate of Charles A. L. Lamar. This credit was for $80,000, and it stated that it was intended to be in compliance with the decree. It was, however, not given on any account, and while it was admissible *per se*, because offered by the plaintiffs, and because it was against Gazaway B. Lamar's interest to make it, and was therefore an admission, it stands alone, and is not a part of a general account against the estate of C. A. L. Lamar. Certain letters between the parties were put in evidence; also an account for what purported to be a formal account of Gazaway B. Lamar against Caroline A. Lamar, as administratrix of C. A. L. Lamar. The amount and the items of this account are so indefinite that it is impossible to say how much was the demand. The books of Gazaway B. Lamar were tendered in evidence, but they were excluded by the court upon the ground that they were not admissible as books of account under the laws of the state of Georgia upon that subject; not being books of original entry, and otherwise objectionable.

When the evidence for complainants had closed, the defendants demurred to the same, and moved to dismiss the bill, upon the grounds, generally, as follows: That Gazaway B. Lamar had sold the mortgaged premises to Charles A. L. Lamar, with warranty of title, and was therefore bound to protect the land against existing incumbrances. When it was found that an unrecorded mortgage had been executed by Gazaway B. Lamar, prior to the sale to his son, and it was sought to enforce the same by the mortgagee, the National Bank of the Republic, he, Gazaway B. Lamar, was in equity bound to discharge the lien of the mortgage, and free the lands which he had sold, and the title which he had warranted. Mrs. Caroline A. Lamar, as administratrix, was compelled to execute the new mortgage now sought to be enforced, in order to save the premises to the estate. Had Gazaway B. Lamar done his duty towards the estate this would have been unnecessary, for he was primarily bound to pay the debt secured by the mortgage; nevertheless, she was compelled to give the mortgage. Thereafter, when Gazaway B. Lamar bought the mortgage for his own pur-

pose, he did no more than he should have done in the beginning; and he cannot now be heard to enforce this mortgage against the estate of his son, C. A. L. Lamar. The complainants reply to this proposition by stating that Charles A. L. Lamar was largely indebted to Gazaway B. Lamar, and that when Caroline A. Lamar, as administratrix, executed the mortgage upon the property of the estate, she was fully recompensed by the credit of $80,000 which Gazaway B. Lamar gave upon his accounts against Charles A. L. Lamar, and by the other propositions of the bill. The estate, the complainants insisted, was bound to pay Gazaway B. Lamar a large sum; how much, or for what, does not appear in the evidence. The defendants insist, in effect, that the complainants are bound to make out by proof these demands against the estate, and, having failed to do so, the bill must be dismissed. The fundamental inquiry of the court in the determination of this weighty and interesting controversy has been this: Was the decree of the superior court of Chatham county by which Caroline A. Lamar, administratrix, was authorized to create this incumbrance upon the assets of the estate in her hands, within the jurisdictional power of a court of equity of the state of Georgia? A judgment of a court without jurisdiction of the person or the subject-matter, or void for any other cause, is a nullity, and may be so held in any court when it becomes material to the interest of the parties to consider it. Code Ga. § 3594. It is insisted with great earnestness that the superior court of Chatham county was satisfied by the proofs, and the hearing before it, that this arrangement for the creation of complainant's mortgage was for the best interest of the estate; that the court here is bound to presume a regular trial, on orderly and legitimate hearing and determination. Now, it is perfectly evident from the entire transaction that it was effected *sub silentio;* that no evidence was presented that the estate of C. A. L. Lamar was indebted to Gazaway B. Lamar, and the decree does not mention any liability of the former to the latter. It could not have been a regular or legal hearing where, as it was insisted, the issue was made upon the bill and answer, and submitted with proofs to the jury. The bill was filed on the 6th of March. With astonishing promptitude the answer of Mrs. Lamar was filed on the same day. On the same day the verdict was taken. On the same day the decree was signed. The whole proceeding was had in term, and not at chambers, and thus in 24 hours, by this most unusual and extraordinary proceeding, the lands of this estate were saddled with a debt of $80,000, and yet, under the law and the practice in equity, the bill must have been brought and pending for more than six months before this decree could have been legally taken. And in addition to these startling facts it appears from the record that the court was not advised that there were children whose interests were being signed away, and no effort was made to protect them, even by the appointment of a guardian *ad litem.* Their names were not mentioned in the proceeding. It was, then, one of those consent proceedings which are sometimes advised by counsel because of their entire confidence in the parties concerned; and, there being nothing in serious dispute suggesting careful

investigation, the law is not so diligently regarded as it should be. But had there been a most earnest and careful controversy and investigation, still if the chancellor who authorized the administratrix to create this huge mortgage upon the estate she represented acted without jurisdiction, it would be the duty of this court, if the interest of the parties required it, so to hold; and this is not only the statute law of Georgia, but it is well settled by the most carefully considered decisions of the most elevated tribunals. In the case of *Williamson* v. *Berry*, 8 How. 540, a case in some respects very similar to that under consideration, the doctrine was announced by the supreme court of the United States in this language:

"We concur that neither orders nor decrees in chancery can be reviewed as a whole in a collateral way; but it is an equally well settled rule in jurisprudence that the jurisdiction of any court exercising authority over a subject may be inquired into in every other court, when the proceedings in the former are relied upon, and brought before the latter by a party claiming the benefit of such proceedings. The rule prevails whether the decree or judgment has been in a court of admiralty, chancery, ecclesiastical court, or court of common law; and whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of states."

Many years after this case was decided it was cited with approval; and the precise language here quoted was repeated as a clear and satisfactory enunciation of the law. *Thompson* v. *Whitman*, 18 Wall. 468. This doctrine has been uniformly adhered to by the courts of the United States since 1794, and its embodiment in the carefully worded statutes of Georgia evinces not only its certainty, but its importance. It is no reply to this proposition to refer to the eminence of the tribunal which has exercised unwarrantable power. In *Williamson* v. *Berry*, *supra*, it had been the illustrious KENT, then chancellor in the equity courts of New York, who had authorized a trustee to convey real estate for the benefit of the *cestui que trust*, but the supreme court did not hesitate to declare null and void his action. So lofty a body as the congress of the United States assumed jurisdiction by a trial before its bar to interfere with the rights of a person, and the courts (in *Kilbourn* v. *Thompson*, 103 U. S. 168) declared that in its judgment it exceeded its jurisdiction, and held its representative responsible in damages for his action carrying into effect the wrong. These are extreme cases, but they show the familiarity and the necessity of the rule that, where a tribunal is without jurisdiction, its action is utterly void, and unavailable for any purpose.

Now, did the superior court of Chatham county have jurisdiction to grant the decree upon which the complainants rely? It is well, perhaps, again to analyze this record. The parties to the bill upon which the decree was granted were the National Bank of the Republic and Gazaway B. Lamar, as complainants, and Caroline A. Lamar, the administratrix of Charles A. L. Lamar, as defendant. The statement of the bill was that Gazaway B. Lamar had sold to Charles A. L. Lamar the lands in controversy, and warranted their title, but that Charles A. L. Lamar had bought with notice of an unrecorded mortgage upon the lands, which had been previously executed by Gazaway B. Lamar to the Bank of the Republic;

that Mrs. Lamar, administratrix, when this mortgage had been foreclosed and levied upon the lands, after the death of her husband, interposed a claim under the deed of Gazaway B. Lamar; and the bill further stated that it would be better for the estate of Charles A. L. Lamar for the administratrix to assume the debt to the extent of $80,000, which Gazaway B. Lamar owed to the Bank of the Republic, and which the bill stated was a lien upon the lands, and to give the mortgage therefor, upon which complainants are now asking a decree for foreclosure here. In consideration of this, Gazaway B. Lamar undertook to pay the remainder of his debt, and further, as proposed by the terms of his bill, as follows: "G. B. Lamar has offered, and does now offer, to said administratrix that, when said sum of $80,000 is paid or secured to be paid out of said estate of C. A. L. Lamar, so that said sum of $80,000 can be credited on the bond of the said G. B. Lamar to the National Bank of the Republic, the estate of C. A. L. Lamar shall be credited with the said sum of $80,000 on account of any claims of the said G. B. Lamar against said estate of said C. A. L. Lamar, which claim your orator, G. B. Lamar, avers to be much greater than the said sum of $80,000." It is proper to observe at this point that this is the only specification of the alleged claims of G. B. Lamar against the estate of C. A. L. Lamar. Neither the amount nor the items are mentioned in the bill or the decree, and the only other reference to them to be found is in the following proposition, also made by Gazaway B. Lamar as a consideration for the execution of the mortgage by the administratrix: "And further, that the said mortgaged property hereinbefore described, together with the other land to be also mortgaged, shall be thenceforth—that is to say, on the execution of the mortgage by Mrs. Lamar, administratrix—discharged and free from the payment of any claim whatever, present or future, of the said G. B. Lamar against the said estate." The charge of the bill is that Mrs. Lamar refused this proposition, notwithstanding the "spirit of conciliation and fairness in which it was made;" one of her pretenses, as the bill said, being that she has no authority to compound the claim. The complainants, insisting that they are without redress at law, pray (1) that the administratrix may answer the bill; (2) that the mortgaged property be decreed to be subject to the debt; and (3) that the administratrix be authorized and empowered to accept the compromise. It is difficult to understand the ground upon which discovery was sought by this bill, or what was the discovery sought. There is literally not an averment in the bill upon which a court of equity would compel discovery, nor is it alleged that discovery is necessary. It is difficult to perceive any legal reason why the bill was filed. It cannot be seriously insisted that such was its object. It does not allege that Gazaway B. Lamar was insolvent, nor that the estate of C. A. L. Lamar was insolvent. In the absence of these allegations, why did not Gazaway B. Lamar pay off the debt to the Bank of the Republic, which he had contracted, and which the bank was seeking to enforce, and thus relieve the land he had sold his son from the lien of the mortgage? If he held claims against the estate of his son, why did he not present those claims in the

manner usual in the administration and settlement of estates? Mrs. La-mar, as administratrix, and Charles A. L. Lamar, her intestate, were neither of them parties to the mortgage which the bill seeks to declare a lien upon the land. It was no debt of the estate. It is true that the bill prayed that the land of the estate be decreed subject to this lien, but that was altogether superfluous, and apparently was an attempt to give jurisdiction in equity, in plain violation of the law of the state. The bill charged that a proceeding to subject the land was already pending in a court of law; that the land has been levied on, and a claim interposed, and the court of law having jurisdiction of that question, the court of equity had no power to interfere with it. The Code of Georgia, which controls this Georgia case, is plain and simple in its mandate upon that topic: "Where law and equity have concurrent jurisdiction, the court first taking it will retain it, unless good reason be shown to the contrary." Code Ga. § 3096. This is the statute law, and repeated decisions of the supreme court of the state enforce its provisions. It is not even pre-tended that there is any reason to transfer this controversy from a court of law to a court of equity, and the ground of equity jurisdiction is nar-rowed down to the attempt to have the court authorize Mrs. Lamar, as administratrix, to pay off a large portion of the debt of Gazaway B. La-mar to the Bank of the Republic from the estate of her husband, and to receive in lieu of the property so conveyed the intangible promise of credit upon demands against the estate, which are certainly involved in a degree of uncertainty and obscurity painful to the mind seeking an equitable adjustment of this controversy. It is true that in her answer the administratrix practically consents to the exercise of this jurisdic-tion, although she neither admits that the estate is indebted to G. B. Lamar, nor that the mortgage is a lien upon its lands. But a party by consent, express or implied, cannot give jurisdiction to the court of the person or subject-matter of the suit, so far as the rights of third persons are concerned. Code, § 3460. Now, the third persons whose interest it is important to consider are the co-defendants of the administratrix here, —the children of herself and Charles A. L. Lamar. They were not par-ties to these extraordinary proceedings to authorize the administratrix to incumber the lands of the estate. It cannot be doubted that they were necessary parties, even had the court jurisdiction of the subject-matter. Now, it was sought to convey the real property of the estate by this mortgage; and realty, in Georgia, descends directly to the heirs, subject, however, to be administered by the legal representative for the payment of the debts or the purposes of distribution. Code, § 2246. The powers granted to an administratrix over the lands are thus carefully guarded. She has title sufficient for purposes of distribution; she has title suffi-cient for purposes of paying the debts of the estate, but not the debts of other persons. This doctrine is reiterated in section 2483 of the Code, which reads: "Upon the death of the owner of any estate in realty, which estate survives him, the title vests immediately in his heirs at law. The title to all other property owned by him vests in the administrator of the estate for the benefit of his heirs and creditors." Code, § 2483. It follows,

then, that the title to their distributive shares of this land vested in the children of Charles A. L. Lamar *eo instanti* of the death of their father; and, since it cannot be pretended that they are parties, they are in no sense affected by this decree, unless there is merit in the contention of counsel that in this matter they were so far represented by the administratrix that they are bound by her action. As a general rule, it is true, as contended by the complainants' solicitors, that in a suit against the executor or administrator the legatees and heirs are not necessary parties. *Beall* v. *Blake*, 16 Ga. 136; Calv. Parties, 20. It will be found, however, that in every case where the administrator is held to represent the heirs, with the effect of defeating their complaints at his action, or their rights of which he has disposed, it was in some matter, or for some purpose, where he was in discharge of a duty imposed upon him by the law. In the case just cited it was an attempt to recover a residuary legacy; and for the purpose of distribution, as already stated, the title was in the executor. In *Redd* v. *Davis*, 59 Ga. 822, cited upon the same point, there was simply a proceeding to amend the judgment against the executor as such, and to subject property liable for a debt of the estate, and, as has been said, the title was in the executor to pay debts; but even here the supreme court decides *dubitante*, page 28. In *Barclay* v. *Kimsey*, 72 Ga. 725,—a case in which the court has unquestionably strained the doctrine to the last extremity of tension,—it was a question of the settlement of accounts, and the payment of debts due by the estate, the purpose for which the title to the land was vested in the administrator. In *Dean* v. *Cotton-Press Co.*, 64 Ga. 670, the sale was made to pay a debt and to make distribution required by the will. This was a question of distribution, and was so held. In *Ansley* v. *Pace*, 68 Ga. 402, there was a petition for leave to sell realty to pay debts, and for the support of the *cestuis que trustent*. Besides, a guardian *ad litem* was appointed for the minor children, who accepted the trust, and had full knowledge of all the facts. In *Wilkinson* v. *Tuggle*, 61 Ga. 381, Chief Justice WARNER, in delivering the decision of the court, held that the land was legally sold by the executor in the due course of administration; and this executor was a party to the bill, and answered it, and admitted that there had been a legal and valid sale of the land by him, as such executor; and that, being so, said the chief justice, "he represented the legatees and devisees under the will of his testator, so far as to legally dispose of his estate in the due course of the administration thereof." This comprises every case on this point cited upon the brief of the learned solicitor for the complainant, and no case has been found where it has been held that the heirs at law are divested of their title by a proceeding to which they were not parties, and where the administrator has acted not only without the sanction of the law, but clearly beyond the powers imposed for his representative duties, unless the rights of *bona fide* purchasers have accrued. Here the persons seeking advantage by the illegal proceeding are parties to it, and are, of course, chargeable with knowledge of all its wrong and illegality. It is safe to say in this case that for every purpose for which title to realty is vested in the administratrix, no matter

how irregular may have been her action, the heirs are bound by it; but as to matters as to which the administratrix had no right in law to act, the heirs are not represented by her, and not parties thereto, and can repudiate her action whenever it becomes necessary to do so.

Now, it is true that administrators have authority to compromise all contested or doubtful claims for or against the estate or wards they represent. Code, § 2882. But the compromise must be effected in a legal manner. An administratrix would have no power to sell the land of the estate at private sale in order to compromise a contested or doubtful claim against it; nor would the administratrix have any power to mortgage the lands of the estate for any such purpose; nor could a court of equity, under the statute law of Georgia, give that power. She has literally no power to create any incumbrance on the estate by note, mortgage, or otherwise. *McFarlin* v. *Stinson*, 56 Ga. 396; *Gaudy* v. *Babbitt*, Id. 640; *Harrison* v. *McClelland*, 57 Ga. 531; 1 Jones, Mortg. § 102. In the first case cited, Chief Justice WARNER declares:

"It is undoubtedly true that the assets of the estate of the deceased testator are liable for the payment of the debts and obligations contracted by him in his life-time, but it would be a novel and dangerous doctrine to hold that the assets of a deceased testator could be liable for the contracts made by his executor after his death; so dangerous to the assets of deceased testators that the law does not allow it to be done. An administrator or executor can only bind himself by his contract,—he cannot bind the estates of the deceased; therefore, if he make, indorse, or accept negotiable paper, he will be held personally liable, even if he adds to his own name the name of his office, signing a note, for example, 'A., as Executor of B.,' for this would be deemed only a part of his description, or will be rejected as surplusage. 1 Pars. Bills & N. 161; *Lovelace* v. *Smith*, 39 Ga. 130."

What, therefore, the administratrix could not do for herself, as such, she may not legally consent for the court to do for her. The court, like the administratrix, is but the creature of the law.

In *Harrison* v. *McClelland*, 57 Ga. 531, the administratrix gave a promissory note, signed, "MAHALABLE A. EDWARDS, Administratrix." She was sued upon it as an individual, and not in her representative character, and she pleaded that it was given for a renewal of old notes made by her intestate during his life. The jury found for the defendant. Error was assigned upon this charge of the court:

"If you believe from the evidence that the note sued on was made and signed by the defendant as administratrix upon the estate of John P. Edwards, and for no new consideration, but in lieu of certain other notes due by her intestate during his life-time, and payable before June 1, 1865, then she is liable, if liable at all, on such note, as administratrix, and there can be no recovery against the defendant in her individual capacity."

This was held error. This case seems precisely in point; the attitude of the parties being changed. To make it fit precisely, suppose that Mrs. Lamar was sued individually upon this mortgage, and she pleaded that she signed the mortgage as administratrix, in consideration of a credit of $80,000 on other notes due by her husband to Gazaway B. Lamar. This case is authority for holding that the plea would be overruled, and

that the estate would be held harmless, while she would be liable as an individual. A reason for this rule would exist in the fact that had the administratrix the power to create mortgages or other debts of high dignity, she could defeat the statute of Georgia which regulates the priority and dignity of debts against an estate. By creating a mortgage upon a debt which was an open account she might often, to defeat all creditors save one, favor one creditor at the expense of another. There are many other obvious reasons which make the vigorous language of Chief Justice WARNER applicable to this clearly illegal exercise of authority. The mortgage which Mrs. Lamar executed was nothing more than a payment by her on the debt of Gazaway B. Lamar,—a payment by the creation of a lien upon property which she had no right to incumber for that purpose, or for any purpose. In order to authorize this, the court of chancery of Chatham county interfered with the regular course of administration, which would have been for Gazaway B. Lamar to present his claim against the estate, if he had a claim, and have it determined upon its merits. To authorize her, then, to create a mortgage to pay off his debt to third persons upon the promise that he would give credit on claims which he did not present or identify, was as distinct an interference with the regular process of administration as could be well imagined. It is in the teeth of the plain provision of the law of Georgia: "Equity will not interfere with the regular administration of estates except upon the application of the representative, either (1) for construction and direction; (2) for marshaling the assets; or (3) upon the application of any person interested in the estate, where there is danger of loss or other injury to his interest." Code, § 3144. Upon what part of this statute does this bill have its footing? In the first place, it is not brought by the representative, but against her. It is not for construction and direction, nor for marshaling the assets; nor is it upon application of any person interested in the estate, where there is danger of loss or other injury to his interest. There is no such allegation, either by Gazaway B. Lamar, or by the Bank of the Republic, who are the complainants. Gazaway B. Lamar, so far from apprehending any loss to his interest, had never presented an account against the estate; and, however great may have been his apprehensions, he said nothing about them in the bill so as to justify the interference of a court of equity; and this was necessary to jurisdiction, if it otherwise had been proper to take it. For what equitable purpose, then, does this bill exist? It is in violation of several important rules of practice and principle in the equity jurisprudence of the courts of the state of Georgia: (1) As we have seen, it attempts to transfer to a court of equity a controversy pending in the court of law; (2) it attempts to convey, by the execution of bond and mortgage, the realty of persons who are not parties to it, and whose interests are not represented by a party; (3) it is an unlawful interference with the regular administration of the estate, in contravention of law, and without excuse; (4) it is an attempt to authorize the administratrix to do that which the law declares she may not do, and which the court had no power to permit or justify. It was conceived for an illegal purpose, and it is like

nothing in the heavens or the earth, or the waters under the earth.   Its consideration was in part upon an intangible and vague account against her husband, which to this moment, so far as the proceedings here indicate, has never been ascertained, even to the extent of stating its items or amount; and the further consideration of a release of the administratrix from liability to pay a debt which not she or her husband, but Gazaway B. Lamar, was bound to pay, and which, so far as this proceeding discloses, he was entirely competent to pay.   The authorization of an administrator to compromise contested and doubtful claims has no such latitude as will justify such a proceeding; nor has a court of equity a power to traffic with the lands of minor children, and disarrange the whole process of administration to accommodate the necessities of a third person, whose only apparent connection with the estate was an immense liability for his breach of warranty.

The bill served simply to gloss over this illegal transaction,—to give to it the illusive sanction of an alleged decree,—and it had no other possible utility.   It was perfectly plain that if Mrs. Lamar, as administratrix, had no right in law to mortgage the lands of the estate, the action of the court could not give her the right.   If she had the right to incumber the land, the action of the court could not make that right stronger. The decree, then, may be considered as eliminated from the case.   It is, in the language of the law, "a mere nullity."   It is true, however, that had the superior court of Chatham county, upon the averments of this bill, the jurisdiction to grant the decree upon which plaintiff relies, the result of this litigation would not be materially different.   The substantial question here is:   Has Gazaway B. Lamar the right to recover on the mortgage executed by the administratrix, and upon which this suit is brought?   It is certainly a matter of grave consequence that he proposed, in his bill, to relieve the mortgaged premises from all demands of his, present and future, if Mrs. Lamar would execute the mortgage; and that the decree, in pursuance of this proposition, distinctly provided that the land so mortgaged "shall be henceforth entirely released from all liability for any debt which may be hereafter found due for any cause existing at or before the date of the decree from the estate to the said Gazaway B. Lamar."   But this decision is not placed upon that ground. It is insisted that he has the same right to recover on this mortgage that the Bank of the Republic would have had.   The court does not so understand the law.   When a mortgage debt is paid by one who is bound to pay it, an assignment of it to him upon payment operates as a discharge, and he will not be allowed to hold it as a subsisting incumbrance, as the payment was in pursuance of his agreement and his duty, and may be regarded as made with the mortgagor's money.   1 Jones, Mortg. § 864; *Brown* v. *Lapham*, 3 Cush. 554; *Wadsworth* v. *Williams*, 100 Mass. 126; *Mickles* v. *Dillaye*, 17 N. Y. 80; *Farwell* v. *Cotting*, 8 Allen, 211; *Gould* v. *Day*, 94 U. S. 413; 1 Jones, Mortg. 867; *Mickles* v. *Townsend*, 18 N. Y. 575; *Collins* v. *Torry*, 7 Johns. 278; *Ryer* v. *Gass*, 130 Mass. 227; *Lappen* v. *Gill*, 129 Mass. 349; 2 Devl. Deeds, §§ 1345, 1346; *Burnham* v. *Dorr*, 72 Me. 198; 2 Pom. Eq. Jur. p. 253, § 796, and note

to 254. Now, when Gazaway B. Lamar sold these lands to his son, this mortgage, which had previously been made by the vendor, and which had not been recorded, was in the hands of the Bank of the Republic, of which he, Gazaway B. Lamar, was the president. His deed to his son makes no mention of the mortgage, but, on the contrary, as we have seen, was an absolute deed of warranty. It is true that he alleged his son bought with notice of mortgage. Conceding this to be true, it was none the less the duty of Gazaway B. Lamar to pay the amount due upon it. *Clay* v. *Banks,* 71 Ga. 363; *Brown* v. *Lapham,* 3 Cush. 554; *Gould* v. *Day,* 94 U. S. 413. It was his debt and not his son's. Rawle, Cov. par. 88; *Dunn* v. *White,* 1 Ala. 645; *Harlow* v. *Thomas,* 15 Pick. 70; *Ladd* v. *Noyes,* 137 Mass. 151; *Redwine* v. *Brown,* 10 Ga. 311; *Leary* v. *Durham,* 4 Ga. 597; *Burk* v. *Burk,* 64 Ga. 632; Code, § 2703; *Refeld* v. *Woodfolk,* 22 How. 326; *Van Rensselaer* v. *Kearney,* 11 How. 321; *Drury* v. *Improvement Co.,* 13 Allen, 171; *Belmont* v. *Coman,* 22 N. Y. 438; *Strong* v. *Converse,* 8 Allen, 557; *Elliott* v. *Sackett,* 108 U. S. 132, 2 Sup. Ct. Rep. 375; *Dawes* v. *Jackson,* 9 Mass. 490. After the death of his son, Charles A. L. Lamar, and when the mortgage was levied upon the land, it was still the duty of Gazaway B. Lamar to pay it, or, if not, to respond upon his covenant of warranty to the estate. Suppose it be conceded, however, that he could not pay it,—and there is no allegation in the bill that would justify this conclusion, and that Mrs. Lamar was compelled to pay it, in order to preserve the *corpus* of the estate,—Gazaway B. Lamar was still bound to recompense her. She did pay a large part of it by the execution of the new mortgage to the Bank of the Republic, and by subsequent payments thereon; and when Gazaway B. Lamar subsequently, had that mortgage assigned by the bank to him, he did nothing more than he ought to have done in the beginning towards the estate of his son; and when, through his administrators, he now seeks to enforce the mortgage against the lands of his son, he is met by the conclusive proposition that as he was bound to pay it in the first instance, when he took an assignment of it to himself, it was discharged. It is insisted that he was no party to the last mortgage sued on, and therefore he had the right to purchase it. The court will, however, look clear through the transaction, and locate the original equity depending upon his liability upon the first mortgage, for which this is merely the substitute. But it is insisted that G. B. Lamar had large claims against the estate of C. A. L. Lamar, which amounted to more than the liability upon his deed of warranty. This may and may not be true; the court has not been informed by any legal evidence upon that subject. It does not appear what was the amount of these claims, what was their consideration, or that they were binding upon the estate. Certainly there was no claim which would authorize a court of equity to direct the administratrix to execute a mortgage for the benefit of Gazaway B. Lamar; and, if his claims against the estate are ever so valid, they must rest upon their merit and their dignity. Were this transaction permissible, the result may be that the open accounts of Gazaway B. Lamar have been transformed into a mortgage upon the lands belonging to the heirs, and thus

the regular process of administration, as we have seen, totally disarranged for his benefit, and in violation of law.

The conclusion of the court is that the Bank of the Republic could not have enforced this mortgage, signed by the administratrix, against the lands of the estate, the property of the heirs of C. A. L. Lamar, other than the administratrix. That the administratrix herself would be personally liable to the bank upon the mortgage is undeniable. A *prima facie* case is made against her when her mortgage with her signature and seal is introduced. This case she is now called upon to meet. When Gazaway B. Lamar bought the mortgage, he was under obligation, so far as the estate and all the heirs, including the administratrix, were concerned, to pay it off, unless he had equities against the estate which would be a sufficient reply, in whole or in part, to this obligation. It does not appear from the evidence now before the court that he had any demand against the heirs not parties to this bill which a court of equity could recognize in the settlement of the controversy. It is true, however, that the administratrix, without authority as such to do so, recognized the existence of indefinite claims against the estate. She did this impliedly in her answer. But this in the opinion of the court was not sufficient in itself. The silence of the answer upon a topic to which the bill by its terms does not seek discovery is insufficient to warrant a decree for a specific amount. *Young* v. *Grundy*, 6 Cranch, 51; *Brown* v. *Pierce*, 7 Wall. 211; Story, Eq. Pl. § 852; *Walker* v. *Walker*, 3 Kelly, 309; 1 Daniell, Ch. Pr. 837; *Van Rensselaer* v. *Kearney*, 11 How. 325; 3 Pom. Eq. Jur. § 1418, and note. She did this more explicitly in her subsequent letters, which are in evidence, but not as to amounts. What the claims of Gazaway B. Lamar were,—what was their consideration or amount,—the court is entirely unadvised. That they were not claims which would justify the execution of this mortgage as affecting the children or their interests is undeniable, and the bill must be dismissed as to the heirs, to-wit, Eliza A. Cunningham, Jane C. Cunningham, Caro N. Du Bignon, Georgia G. Lamar, and Mary L. Lamar; but the court is of the opinion that sufficient evidence has been adduced to order a decree against the distributive share of Caroline A. Lamar, or, if she now desires to reply to the plaintiffs' evidence, to require that an account be taken between Caroline A. Lamar and her distributive share in the estate of Charles A. L. Lamar, and the estate of Gazaway B. Lamar, in order that it may be made to appear to the court whether the administrators of Gazaway B. Lamar have such equities against that distributive share as will justify a decree of foreclosure against her interest.

A decree will be framed in accordance with this decision, and the matters indicated as remaining unsettled will, if necessary, be referred to the master to take an account, and to report his finding to the court.